## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

JAMES A. WILSON, et al.,      )
                                     )
          Plaintiffs,      )
                                     )
      v.                   )     C.A. No. 05-399-JJF
                                     )
STANLEY TAYLOR, et al.,       )
                                     )
          Defendants.     )

## DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO DISMISS/SUMMARY JUDGMENT PURSUANT TO RULE 12 (b)(1) and 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE

### I.    Introduction

With the exception of two changes, the Second Amended Complaint filed by James Wilson is identical to his First Amended Complaint which was dismissed by this Court on October 11, 2005. The two paragraphs containing the amended claims appear to revolve around the theme denial of due process in disciplinary proceedings. It is these two paragraphs which Defendants will respond to with their motion to dismiss/summary judgment.

Defendants refer to matters outside the pleadings, therefore the Court may treat its motion to dismiss as one for summary judgment. *See* Fed. R. Civ. P. 12(b)(6); *Camp v. Brennan*, 219 F.3d 279, 280 (3rd. Cir. 2000) (consideration of matters beyond the complaint converts a motion to dismiss into a motion for summary judgment). Stanley Taylor, Rick Kearney, James Hollis, Michael DeLoy, John Stozenbach and Melvin Hennessy contend that they are entitled to judgment as a matter of law because there are no genuine issues of material fact in dispute. *See Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (once the moving party has carried its initial burden, the nonmoving party "must come forward with

'specific facts showing that there is a genuine issue for trial.'").  Defendants assert that Plaintiffs have not made, and cannot make a sufficient showing of the essential elements of their case for which they carry the burden of proof.  Therefore, dismissal is appropriate.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In addition, Defendants state, unless there is sufficient evidence to enable a jury reasonably to find for the nonmoving party on the factual issue, summary judgment should be granted.  *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986).

## II.    Statement of Facts

Plaintiffs' Complaint provides few specific facts.  There are no dates associated with any of Plaintiffs' allegations, and except for page four of the Complaint where they provide "Examples" there is nothing to establish a context for the allegations.  Therefore, this Statement of Facts will focus on the "Examples" provided by Plaintiffs.

In the examples cited on page four Plaintiffs claim that Nathan Henry was found guilty of disobeying an order and subsequently moved out of the Merit building, and lost his job prior to completion of the appeal process.  Other than to say the incident involved a failure to obey orders to clean showers again, Plaintiffs provide no details of the incident, nor a date when this incident allegedly occurred.  A review of the disciplinary reports for Nathan Henry for the year 2005, show two incidents with resulting disciplinary action.  (*See* Affidavit of Melvin Hennessy, attached as Exhibit "A").  The first incident report and accompanying disciplinary report Nathan Henry received a loss of privileges for twenty four hours for failing to obey an officer's order to clean the showers a second time because they were still dirty.  (*See* Incident and Disciplinary Report of May, 2005, attached as Exhibit "B").  Henry did not lose his job as a result of this incident.  He lost his job because he was not doing the job properly.  (Ex. A).  Henry was

reclassified and his housing unit changed because the Merit housing is a type of "honor" housing for inmates who do not have any infractions of the rules. (Ex. A). In another incident in September, 2005, Henry was found *not* guilty of refusal to participate in a treatment program. (*See* Incident and Disciplinary Report of September, 2005, attached as Exhibit "C").

Plaintiffs also allege that Pedro Centra was cap-stunned while allegedly backing away from and officer. Plaintiffs next claim that Officer Stozenbach observed this incident and allege that he did nothing to stop the other officer. Again, there is no detail provided by the plaintiffs, nor any dates when this incident may have occurred. A review of the incident and disciplinary report for Pedro Cintra tell a very version of the events from what Plaintiffs describe. (*See* Incident and Disciplinary Reports of Pedro Cintra, attached as Exhibit "G"). The incident report shows that he became verbally abusive, increasingly disorderly and when the officer finally used the cap-stun, Cintra tried to hit him with his fist. Cintra received ten days in isolation for these infractions. Plaintiff Cintra has not responded to a letter from counsel for the defendants, and mail sent to him has been returned by the post office.

Plaintiff James Wilson filed a Complaint alleging the denial of due process and equal protection on June 15, 2005, enclosing a copy of a page of signatures. (D.I. 1). He submitted an Amended Complaint to this Court on August 11, 2005, attaching a copy of the same signature page to the Complaint. (D.I. 15). On October 24, 2005, Plaintiff submitted a Second Amended Complaint, with the same signature page attached. (D.I. 24). A deficiency notice was sent to Plaintiff James Wilson stating that the original signature was missing on the Second Amended Complaint. (D.I. 25). On November 7, 2005, Plaintiff James Wilson resubmitted the Second Amended Complaint after signing *his* name and date over the signature dated June 10, 2005. (D.I. 27). The same signature page was attached to this Complaint as appeared in the original

Complaint filed on June 15, 2005.  (D.I. 27).

On March 21, 2006, one of the listed plaintiffs in this case filed a letter with the Court stating asking to be removed from the law suit. (D.I. 73).  In that letter, the plaintiff stated "I signed a petition not a lawsuit…"  (See letter, attached as Exhibit "D").  The letter goes on to say that the inmate's name "was put there without my permission."  (Ex. D).

After learning that the signature page on the Complaint was taken from a petition, in an attempt to find out who actually wished to participate in the suit, Defendants sent out a letter to each listed plaintiff.  (*See* Letter dated March 28, 2006, attached as Exhibit "E").  The letter contained a pre-paid return envelope, and asked those who wished to remain in the case to sign and return the second page.  As of the date this motion is filed, eleven inmates, including James Wilson wish to remain in the suit, and nineteen others either did not respond or asked to be removed from the suit.  (*See* list of plaintiffs and their responses, attached as Exhibit "F").

## **ARGUMENT**

**I.    PLAINTIFF JAMES WILSON HAS FILED A FRAUDULENT COMPLAINT AND THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11.**

When filing this Complaint, Plaintiff James Wilson committed a fraud on this Court, and his Complaint should be dismissed pursuant to Fed. R. Civ. P. 11.  When a party submits pleadings and other documents to the Court, the party is expected to sign the pleading representing to the Court that he has read the document. Fed. R. Civ. P. 11(b).  When the Court finds a Rule 11 violation, it may impose sanctions that include non-monetary directives, or other sanctions "sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Fed. R. Civ. P. 11(c)(2).  Inmates who litigate jointly take on the "risks for *all* the claims in the complaint, whether or not they concern him personally." *Boriboune v. Berge*,

391 F.3d 852, 855 (7th Cir. 2004).   The Court of Appeals in *Boriboune* went on to say that "Rule 11 requires all unrepresented plaintiffs to sign the complaint, and the signature conveys all of the representations specified by Rule 11(b) for the entire complaint." *Id.* at 855.  The Court went on to hold that when a case is dismissed because it is frivolous or fails to state a claim for which relief may be granted, *all of the plaintiffs* incur strikes under 28 *U.S.C.* § 1915(g).  *Id.* (emphasis added).  Finally, the Court held that "[c]omplaints about prison-wide practices do not require more than one plaintiff", and that co-plaintiffs will be held accountable for the claims of other inmates.  *Id.* at 856.

In the instant case Plaintiff James Wilson committed fraud when he attached a signature page from a petition to the Complaint, in essence stating that all those who signed that page read and agreed with the contents of the Complaint.  However, there is nothing but the word "signature" at the top of the page.  There is nothing that indicates that the people who signed the page knew they were signing a Complaint, to initiate a lawsuit.  In fact, in March, 2006, one of the plaintiffs wrote a letter to this Court asking to be removed from the lawsuit because he signed a petition, and he did not give permission to have his name used in a lawsuit.  (Ex. D).

This letter from the listed plaintiff means that other putative plaintiff may not have been aware that they were signing on to litigation. *Pope v. Fed. Express Corp*. 49 F.3d 1327 (8th Cir. 1995). Under Rule 11, the Court may dismiss the suit as a sanction for filing fraudulent documents.

The Complaint should be dismissed as a sanction for filing fraudulent documents for the reasons discussed below.  First, because Wilson did not make it clear at the top of the signature page that the other inmates were signing on to a lawsuit, from the outset it is almost impossible to know who knows about this suit and is interested in joining as a plaintiff.  In fact, a couple of

plaintiffs have asked to be removed from the suit, including the plaintiff already mentioned, who stated that he signed a petition and did not give his permission to enter a lawsuit.

Because it is not clear who had knowledge of the lawsuit when it was filed, the question must be asked: "Who's interests are being represented in this lawsuit?"  The pleading requirements make it clear that the plaintiffs must provide some specificity regarding who is making each allegation.  In this instance, it is so unclear who of the thirty putative co-plaintiffs is making which allegations, that it is like trying to see through a brick wall to read the tea leaves on the other side.  Global allegations, even in paragraphs twenty five and twenty six of the Complaint are not attributed to any particular plaintiff.   The vague allegations that may be attributable to any one, all, or none of the listed plaintiffs place an unfair burden on the defendants to attempt a response.

The second reason for dismissing this case is that Plaintiff James Wilson commits this fraud on the Court not once, not twice, but three times.  The same signature page is included with the original Complaint, (D.I. 1), the first Amended Complaint, (D.I. 15) and the Second Amended Complaint (D.I. 27).  The effect of his action is that there is no evidence that those who signed the original signature page know anything about this case and  that it was dismissed once.  Assuming *arguendo* that the inmates listed on the signature page even knew they were signing up to participate in a lawsuit, due to the same signature page being used on all the versions of the Complaint, there is no proof that Wilson ever discussed the progress of the case with the other inmates.  Adding this signature page with thirty names is Wilson's way to bolster his claims of widespread constitutional violations, when in fact, he does not provide any  specific information regarding the involvement of the other inmates, over the course of filing three Complaints.  As the Court in *Boriboune* stated, complaints involving institution-wide violations

require only one plaintiff. *Boriboune*, 391 F.3d at 856. If Wilson felt compelled to file a lawsuit, he did not require thirty other names on the suit in order for the Court to take it seriously.

The third reason why this case should be dismissed as a sanction for fraud is that Wilson has jeopardized the *in forma pauperis* ("IFP") status of the other inmates listed on the signature page. If this case is dismissed for failure to state a claim, then a strike accrues to all the putative plaintiffs under 28 *U.S.C.* § 1915(g). *Boriboune*, 391 F.3d at 856. This strike will accrue to inmates even though there is no proof that they gave their permission to be part of this lawsuit. Wilson's fraud not only affects this case, but the ripple effect may be felt by the listed plaintiffs when they file future lawsuits and find they are ineligible for IFP status.

Finally, Defendants had no choice but to send a letter to all of the listed plaintiffs when they discovered that the signature page was taken from a petition. (Ex. E). This was the only way Defendants could assess who really is a plaintiff in this case. Those who did not wish to be part of the case were asked to do nothing. Two inmates have actively asked to be removed, and seventeen others did not return the letter. (Ex. F). Even casting the response to the letter in the light most favorable to Wilson, there are a large number of listed plaintiffs who are indicating by their lack of response that they do not wish to be a part of this case.

## II.    DEFENDANTS ARE ENTITLED TO DISMISSAL BECAUSE THE PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Though *pro se* pleadings are entitled to leniency, such pleadings must still place a defendant on notice as to what wrong he has supposedly committed. *Riley v. Jeffes*, 777 F.2d 143, 148 (3d Cir. 1985) ("[I]f a plaintiff presents only vague and conclusory allegations, the complaint should be dismissed."). *See also Solis v. Breslin*, 107 Fed.Appx. 262, 264 (2d Cir.

2004)(quoting *Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506, 514 (2002) (affirming the District Court's dismissal of a *pro se* inmate's complaint because he had "not alleged the occurrence of any specific acts" which gave the defendants "fair notice" of what his claim was and "the grounds upon which they rest."). "Plaintiffs suing governmental officials in their individual capacities, . . . must allege specific conduct giving rise to a constitutional violation." *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002). "This standard requires more than conclusional assertions: The plaintiff must allege specific facts giving rise to a constitutional violation." *Id.* Although facts must be read in a light favorable to the non-moving party when considering a motion to dismiss or for summary judgment, there is no requirement to accept as true factual allegations that are vague and amorphous and thus cannot be proved.

Plaintiffs have the clear burden to provide enough information to give the defendants fair notice of the grounds for their claims. A review of Plaintiffs' Complaint provides Defendants with no specific information about any of the claims. There are no names linked to either paragraph twenty five or twenty six, and only two names linked to the "Examples" on page four of the Complaint. There are no dates, times, places or specific incidents linked to each claim to give the reader any notice of the specific actions that form the grounds for the allegations. Plaintiffs have had three opportunities to craft a Complaint that provides adequate information to Defendants and the Court. The purpose of the Complaint is to provide notice to Defendants, not make bald, conclusory allegations, essentially demanding that Defendants figure out the basis for Plaintiffs' claims. Because Plaintiffs' Complaint is deficient it merits dismissal.

III.    **PLAINTIFF'S CLAIM FAILS TO STATE A CLAIM FOR A VIOLATION OF THE DUE PROCESS CLAUSE OF THE FORUTEENTH AMENDMENT.**

In the two paragraphs of the Second Amended Complaint that have not been dismissed by the Court, Plaintiff Wilson alleges that Defendants violated his or some one's due process

rights regarding "refusing to overturn the plaintiff's conviction…"    (*See* Complaint ¶ 25). However, Plaintiff's allegations fail to state a claim or even provide specific allegations to which Defendants can respond.  In the section of the Complaint labeled "Example" on page four of the Complaint, Plaintiffs talk about Nathan Henry.  The circumstances surrounding Nathan Henry's disciplinary incidents do not state a claim for violation of the Due Process Clause.

The analysis of the Plaintiffs' Due Process claim as stated in paragraph twenty five of his Complaint first must focus on whether they have alleged an infringement of a protected liberty interest.  *Sandin v. Conner*, 515 U.S. 472 (1995); *Hewitt v. Helms*, 459 U.S. 460 (1983).  In this case, any protected liberty interest can only arise from either the Due Process Clause itself or Delaware law. This Court has consistently held that Delaware law does not create a liberty interest in remaining in the general prison population, retaining a particular security classification, or obtaining or keeping a job.[1]  The Constitution does not recognize a liberty interest in remaining in the general prison population as apparently alleged by Plaintiff Wilson on behalf of Nathan Henry.  *See Hewitt v. Helms*, 459 U.S. at 466. "It is plain that the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence."  *Hewitt v. Helms*, 459 U.S. 460, 468 (1983).

> *Hewitt* makes clear that the Fourteenth Amendment Due Process Clause does not by force of its own words create a liberty interest in a prison inmate "being confined to a general population cell, rather than the more austere and restrictive administrative segregation quarters."

---

[1] Delaware law does not create a liberty interest in remaining in the general prison population or retaining a certain security classification.  *Jackson v. Brewington-Carr*, 1999 WL 27124, * 2 (D. Del. Jan. 15, 1999)(statutes and regulations governing Delaware prison system do not provide inmates with liberty interests in remaining free from administrative segregation or from a particular classification); *Carrigan v. State of Delaware*, 957 F. Supp. 1376 (D. Del. 1997)(prisoner has no constitutionally protected interest in a particular classification); *Abdul-Akbar v. Dep't of Correction*, 910 F. Supp. 986 (D. Del. 1995)(inmates have no "legitimate entitlement" to employment or rehabilitation).

*Leyton v. Beyer*, 953 F.2d 839, 845 (3d Cir. 1992).

In relation to an incarcerated individual's liberty interests, the Supreme Court has held that such liberty interests are limited to "freedom from restraint" which imposes "atypical and significant hardship in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. at 483-84.

> [T]he baseline for determining what is "atypical and significant" is ascertained by what a sentenced inmate may reasonably expect to encounter as a result of his or her conviction in accordance with due process of law.

*Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997). As this Court has stated, there are two factors the Court must consider in determining whether an inmate has suffered an "atypical and significant hardship". The Court must consider: 1) the amount of time the prisoner was placed into disciplinary segregation; and 2) whether the conditions of his confinement in disciplinary segregation were significantly more restrictive that those imposed on other inmates in solitary confinement. *Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000). "*Sandin* instructs that placement in administrative confinement will generally not create a liberty interest." *Allah v. Seiverling*, 229 F.3d 220, 224 (3d Cir. 2000). "The decision where to house inmates is at the core of prison administrators' expertise." *McKune v. Lile*, 536 U.S. 24, 26 (2002)(*citing Meachum v. Fano,* 427 U.S. 215, 225 (1976)).

Plaintiff appears to be alleging that Nathan Henry was received a higher security classification, which caused him to be moved to more secure housing and lose his job due to intentional discrimination by Defendants. However, a review of the incident report involving the showers shows that Nathan Henry was sanctioned with a loss of privileges for twenty four hours. He did lose his job, but not because of the disciplinary action. He lost his job because he performed poorly. (Ex. A). He was moved out of the Merit building because that housing is only

for those inmates who do not commit infractions of the rules. A twenty four hour loss of privileges does not warrant special consideration nor does it convert Plaintiff's flawed Due Process claim into a viable cause of action. In *Shoats*, this Court held that "eight years in administrative custody, with no prospect of immediate release in the near future" is "atypical" within the meaning of *Sandin*. *Shoats*, 213 F.3d at 144. *But See Fraise v. Terhune*, 283 F.3d 506, 522-3 (3d Cir. 2003)(holding that administrative segregation which may be indefinite in duration is not "atypical" as contemplated by *Sandin*); *Griffin v. Vaughn*, 112 F.3d 703, 706-8 (3d Cir. 1997)(15 months in administrative segregation not atypical and significant hardship); *Jones v. Baker*, 155 F.3d 810, 813 (6th Cir. 1998)(confinement in administrative segregation for two and a half years is not atypical and significant hardship).

The type of disciplinary action that occurred with Nathan Henry does not qualify as an "atypical and significant hardship" pursuant to *Sandin* and its progeny. Plaintiffs cannot state a cause of action based on Henry's removal from the Merit building population. Although Plaintiffs allege a violation of Henry's rights, no such right to remain in the Merit or minimum population exists.

The Plaintiffs' allegations regarding Henry's loss of a job after this incident are equally meritless. The Plaintiffs have no right to employment or rehabilitation while he is incarcerated. *See Abdul-Akbar v. Dep't of Correction*, 910 F. Supp. 986 (D. Del. 1995)(inmates have no "legitimate entitlement" to employment or rehabilitation). In addition, Henry lost the job not though disciplinary action, but because he did not do the job correctly. (Ex. A).

Plaintiffs fail to state a claim for violation of the Due Process Clause when they make vague allegations regarding the disciplinary process. Plaintiffs, in the examples they provide on page four of the Complaint, make bald allegations about white inmates not receiving the same

discipline as black inmates, without a scintilla of evidence to support this claim.  Plaintiffs provide no information about who the white inmates are and what infractions they committed, and when they occurred.

Plaintiffs have no liberty interest in the disciplinary hearing.  The Due Process Clause of the Fourteenth Amendment does not create a liberty interest in freedom from disciplinary action which is taken "within the sentence imposed."  *Sandin*, 515 U.S. at 480.   The Supreme Court has also held that "[a]s long as the conditions or degree of confinement to which [a] prisoner is subjected is within the sentence imposed upon him, and is not otherwise violative of the Constitution"  then the inmate does not have a liberty interest entitling him to the protection of the Due Process Clause.  *Hewitt v. Helms*, 459, 468 U.S. 460, 468 (1983) (quoting *Montanye v. Haymes*, 427 U.S. 236, 242 (1976).

Finally, Plaintiffs make bald allegations regarding Defendants failure to "overturn his conviction despite his knowledge."   (Complaint, ¶ 25.).   Plaintiffs do not provide any information about a "conviction," a description of the incident, or when it occurred.  Nor do Plaintiffs say who was supposed to know what and when they were supposed to have known anything about violation of Plaintiff's rights.

## IV.    PLAINTIFFS' VAGUE ALLEGATIONS OF DISCRIMINATORY TREATMENT DO NOT STATE A CLAIM FOR VIOLATION OF THE EQUAL PROTECTION CLAUSE.

Plaintiffs' vague allegations that black inmates treated differently in the context of disciplinary actions, jobs and classification are so vague that they provide no notice to Defendants of what they did to violate Plaintiffs' rights.  "Discriminatory intent may be established by showing an unequal application of a prison policy or system, but conclusory assertions of racism are insufficient." *Hill v. Thalacker*, 399 F. Supp. 2d 925, 929 (W.D. Wis.

2005)(citing *Minority Police Officers Ass'n v. South Bend,* 801 F.2d 964, 967 (7th Cir.1986).

Plaintiffs fail to provide any evidence to back up the claims of racial discrimination. They cite

no specific policies or rules, nor do they provide any examples of similarly situated white

inmates receiving better treatment or more opportunities. Plaintiffs provide a lot of verbiage, but

the allegations are bereft of any substance that will allow the Defendants to respond or the Court

to evaluate the claims.

      Inmates are not a protected group. Their claims under the Equal Protection Clause are

therefore analyzed under the rational relationship standard. *Abdul-Akbar v. McKelvie,* 239 F.3d

307, 317 (3d Cir.2001). The prison policies and regulations at issue are evaluated for their

rational relationship to a legitimate penological interest. *Turner v. Safley,* 482 U.S. 78, 79 (1987*).*

To prove racial discrimination Plaintiffs must provide proof that they were treated differently

from similarly situated white inmates, and that Defendants acted with a discriminatory purpose.

*Minority Police Officers Ass'n*, 801 F.2d at 966. In this instance, Plaintiffs cite no specific

policies or regulations, nor do they state how the discrimination occurs. Plaintiffs repeat over

and over that white inmates receive better treatment in the areas of classification and jobs,

without ever providing specific examples of white inmates receiving better treatment. The

examples Plaintiffs do provide do not provide any comparison with similarly situated white

inmates. In this way Plaintiffs avoid any comparison of their individual status with the white

inmates. Without the comparison, Plaintiffs' claim lacks the essential ingredient for a successful

discrimination claim.

## V.    PLAINTIFF PROVIDES NO EVIDENCE OF PERSONAL INVOLVMENT BY DEFNEDANTS KEARNEY, DELOY OR COMMISSIONER STAN TAYLOR.

      In actions brought pursuant to 42 *U.S.C.* § 1983, an individual cannot be held liable in the

absence of personal involvement or knowing acquiescence of the alleged deprivation.

*Pennsylvania v. Porter*, 659 F.2d 306, 336 (3d Cir. 1981), *cert. denied,* 458 U.S. 1121 (1982). "[T]he officials' misconduct cannot be merely a failure to act. Such officials must have played an affirmative role in the deprivation of the plaintiffs' rights, i.e., there must be a causal link between the actions of the responsible officials named and the challenged misconduct." *Id.* Without identifying how they participated in, personally directed, or acquiesced in the events which Plaintiffs claim deprived them of constitutional rights, Defendants Kearney, Deloy and Taylor cannot be held liable and dismissal is appropriate. *Gay v. Petsock*, 917 F.2d 768, 771 (3d Cir. 1990); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). To show "deliberate indifference," a plaintiff must demonstrate a sufficiently culpable state of mind on the part of the defendant. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 828 (1994).

In this case, Plaintiffs allege in paragraph twenty six that Stanley Taylor and Rick Kearney "are failing to remedy unlawful conditions that they know or should know about." (Complaint, ¶ 26). The standard for deliberate indifference is actual knowledge and "it is not enough that that the official 'should have known' of a substantial risk or that a reasonable officer in the situation would have known of the risk." *Haley v. Gross*, 86 F.3d 630, 641 (7th Cir. 1996). Plaintiffs' allegations are so vague, chimerical and unsupported, that they not only fail to provide any notice of the alleged wrongs by the defendants, but they provide no substance for their claims. Therefore, Defendants are entitled to summary judgment.

## VI.    THE PLAINTIFF HAS FAILED TO SERVE DEFENDANT MEARS. ACCORDINGLY, ALL CLAIMS AGAINST HIM SHOULD BE DISMISSED.

A review of the docket in this matter indicates that the Plaintiffs have failed to effect service of process upon Defendant Mears. Federal Rule of Civil Procedure 4(m) requires service of the complaint and summons within 120 days of filing the complaint with the Court. As of the date of this filing, Plaintiffs will have failed to serve Defendant Mears within 162 days of the

filing of the Complaint in clear violation of Rule 4(m).  For this reason, Plaintiffs cannot establish personal jurisdiction over Defendant Mears.  *See Sene v. MBNA America*, Inc., C.A. No. 04-1331-JJF, 2005 WL 2304181, at \*4 (D. Del September 20, 2005)(dismissing a complaint for failure to effect service and subsequent absence of personal jurisdiction).  As in *Sene*, the instant Plaintiffs have entirely failed to establish personal jurisdiction over Defendant Mears and he is entitled to summary judgment as to all claims against him.

## VI.    THE ELEVENTH AMENDMENT IMMUNIZES DEFENDANTS FROM SUIT IN THEIR OFFICIAL CAPACITIES.

The Plaintiffs' Complaint arguably names the Defendants in their official capacities.  The Eleventh Amendment provides that "the Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." While the Amendment does not facially bar suits against the State by its citizens, the United States Supreme Court has held that in the absence of consent, a state is "immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974).

The Eleventh Amendment stands "for the constitutional principle that State sovereign immunity limit[s] the federal courts' jurisdiction under Article III." *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996).  "The Eleventh Amendment limits federal judicial power to entertain lawsuits against a State and, in the absence of congressional abrogation or consent, a suit against a state agency is proscribed." *Neeley v. Samis*, 183 F. Supp. 2d 672, 678 (D. Del. 2002) (*quoting Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 98-100 (1984)). The United States Congress can abrogate a state's sovereign immunity, and therefore, its Eleventh Amendment immunity through the Fourteenth Amendment; however, only a clear

indication of Congress' intent to waive the states' immunity will produce this result. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996). No such clear intent can be seen in 42 *U.S.C.* §1983. In fact, a review of the statute demonstrates that Congress did not intend to waive the states' immunity. The statute facially allows suits only to be brought against "persons." 42 *U.S.C.* §1983. Neither the State of Delaware, nor agencies or officials of the State of Delaware are "persons" as contemplated by 42 *U.S.C.* § 1983.

A suit against state officials in their official capacities is treated as a suit against the State. *Hafer v. Melo*, 502 U.S. 21 (1991). Under federal law, the Defendants in their official capacities are not "persons" for the purposes of 42 *U.S.C.* § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). Consequently, given this categorization, this Court lacks jurisdiction over the Defendants in their official capacities, and Defendants are outside the class of persons subject to liability under 42 *U.S.C.* § 1983. Accordingly, any "official capacity" claims against Defendants should be dismissed based on the Eleventh Amendment to the United States Constitution.

## VIII.   DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

The doctrine of qualified immunity protects government officials from civil liability insofar as their conduct "does not violate clearly established statutory or Constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity protects officials from the personal cost of litigation and the attendant inhibiting effect litigation has on the proper discharge of their official responsibilities. *Lee v. Mihalich*, 847 F.2d 66, 69 (3d Cir. 1988).

The Supreme Court has announced unequivocally that the District Court, at the earliest possible stage of litigation, must consider the defense of qualified immunity under a legal

standard separate and apart from its analysis of the underlying claim itself. These two analyses are not susceptible to fusion, and cannot be left for factual resolution by the trier of fact. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

The first question before the Court in a qualified immunity analysis is whether, taken in the light most favorable to the party asserting injury, the facts show that the prison officials' conduct violated a constitutional right. *Brosseau v. Haugen, 125 S.Ct. 596, 598 (2004)(citing Saucier v. Katz*, 533 U.S. 194, 201 (2001)). For the reasons set forth above, Plaintiff has failed to provide any evidentiary support to any of his alleged constitutional violations. In addition, Plaintiff's claims also suffer from several legal defects as set forth above. Plaintiff fails to make out a constitutional violation.

The next stage of the qualified immunity analysis requires the Court to ask whether the constitutional right allegedly violated was clearly established. *Saucier*, 533 U.S. at 201. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable prison official that his conduct was unlawful in the situation he confronted." *Id* at 202. The "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The Court must ask whether a reasonable public official would know his or her *specific conduct* violated clearly established rights. *Grant v. City of Pittsburgh*, 98 F.3d 116, 121 (3d Cir. 1996). "The 'salient question' is whether the state of the law at the time of the challenged conduct gave defendants 'fair warning' that their action was unconstitutional. *Black Hawk v. Pennsylvania*, 225 F.Supp.2d 465, 480 (M.D. Pa. 2002)(*quoting Hope v. Pelzer*, 536 U.S. 730,741 (2002)(articulating the "clearly established" inquiry to require that an official have 'fair warning' that the alleged activity engaged in was unconstitutional)).

Plaintiffs' claims are based on heretofore unrecognized legal rights based on chimerical guarantee of protection. Nothing in his Complaint or records supports a finding that any of the defendants ever engaged in any conduct which violated Plaintiffs' rights. Additionally, Plaintiffs' vague statements in his Complaint fail to allege how any Defendants' *specific conduct* violated his clearly established rights. Assuming *arguendo* Plaintiff's ability to support any violation of any constitutional right, there is no legal authority which would provide the Defendants with "fair warning" that their alleged activities were unconstitutional. Accordingly, the Defendants are entitled to the defense of qualified immunity and summary judgment in their favor.

## CONCLUSION

For all the reasons stated above, Defendants respectfully request that this Honorable Court enter an order granting Defendants' motion to dismiss/summary judgment.

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

/s/ Lisa Barchi
Lisa Barchi  #3927
Deputy Attorney General
Carvel State Office Building
820 N. French Street, 6th floor
Wilmington, DE 19801
(302) 577-8400
lisa.barch@state.de.us

DATE:  April 18, 2006                    Attorney for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on April 18, 2006 I electronically filed *Motion to Dismiss/Summary Judgment* with the Clerk of Court using CM/ECF. I hereby certify that on April 18, 2006 I have mailed by United States Postal Service, the document to the following non-registered participant:

Eldon Potts, Inmate
SBI #  211193
Sussex Correctional Institution
Post Office Box 500
Georgetown, DE 19947

Frank Williams, Inmate
SBI #  261867
Sussex Correctional Institution
Post Office Box 500
Georgetown, DE 19947

Howard Parker, Inmate
SBI # 165324
Sussex Correctional Institution
Post Office Box 500
Georgetown, DE 19947

James Johnson, Inmate
SBI #  155123
Sussex Correctional Institution
Post Office Box 500
Georgetown, DE 19947

Roderick Brown, Inmate
SBI #  315954
Sussex Correctional Institution
Post Office Box 500
Georgetown, DE 19947

Nathan Henry, Inmate
SBI #  324881
Sussex Correctional Institution
Post Office Box 500
Georgetown, DE 19947

George A. Jackson, Inmate
SBI # 171250
Sussex Correctional Institution
Post Office Box 500
Georgetown, DE 19947

Jerome Green, Inmate
SBI #  147772
Sussex Correctional Institution
Post Office Box 500
Georgetown, DE 19947

Jose Serpa, Inmate
SBI #  350322
Sussex Correctional Institution
Post Office Box 500
Georgetown, DE 19947

Anthony Morris, Inmate
SBI #  300363
Sussex Correctional Institution
Post Office Box 500
Georgetown, DE 19947

Roderick Brown, Inmate
SBI #  315954
Sussex Correctional Institution
Post Office Box 500
Georgetown, DE 19947

James A. Wilson, Inmate
SBI #  163663
Sussex Correctional Institution
Post Office Box 500
Georgetown, DE 19947

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

/s/ Lisa Barchi
Lisa Barchi
Deputy Attorney General
Department of Justice
820 N. French Street, 6th Floor
Wilmington, DE 19801

(302) 577-8400
lisa.barchi@state.de.us