IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

JAMES A. WILSON, et al.,            :
                                    :
         Plaintiffs,                :
                                    :
    v.                              : Civil Action No. 05-399-JJF
                                    :
STANLEY TAYLOR, et al.,             :
                                    :
         Defendants.                :

---

James A. Wilson, et al., <u>Pro</u> <u>se</u> Plaintiffs.


Lisa Barchi, Esquire, Deputy Attorney General, Delaware
Department of Justice.
Attorney for Defendants.

---

**<u>MEMORANDUM OPINION</u>**

December ___, 2006
Wilmington, Delaware

**Farnan, District Judge**

Presently before the Court is Defendants' Motion To Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) with supporting memorandum (D.I. 80, 81), Plaintiff James A. Wilson's ("Plaintiff Wilson") Motion To Amend (D.I. 85), Defendants' Motion To Strike Plaintiffs' Sur-reply To Defendants' Motion to Dismiss (D.I. 102), and Plaintiff Wilson's Motion For Summary Judgment (D.I. 103). For the reasons set forth below, the Court will deny Defendants' Motion To Strike and grant in part and deny in part Plaintiffs' Motion To Amend. The Court will grant Defendants' Motion To Dismiss in part and deny it in part. The Court will deny Plaintiff Wilson's Motion For Summary Judgment.

**I.    BACKGROUND**

Plaintiff James A. Wilson and thirty inmates incarcerated within Delaware Department of Correction institutions filed this action pursuant to 42 U.S.C. § 1983. (D.I. 1.) A number of Plaintiffs have dismissed their claims and others have been dismissed by the Court. The following Plaintiffs remain in the case: James A. Wilson, Anthony Morris, Eldon Potts, Roderick Brown, Frank Williams, Jerome Green, Jose Serpa, James Johnson, Shaun Lee, and Nathan Henry.

The Amended Complaint (D.I. 27) contains several miscellaneous claims which were dismissed as frivolous pursuant

-1-

to 28 U.S.C. § 1915A.  (D.I. 34.)  The remaining claims allege

that black inmates at the Sussex Correctional Institute ("SCI")

are routinely denied their right to procedural due process

pursuant to the Fourteenth Amendment during disciplinary hearings

and security classification determinations.  The Amended

Complaint raises an equal protection claim, alleging that white

inmates receive preferential treatment over similarly situated

black inmates in security classifications and job placement.  The

Amended Complaint also alleges that Defendant Sgt. Mears

("Mears") used excessive force against Plaintiff Pedro Cintra

("Plaintiff Cintra") and that Defendant Cpl. J. Stozenbach

("Stozenbach") failed to protect Plaintiff Cintra in violation of

the Eighth Amendment.  Plaintiffs allege that Defendants, who are

variously administrators, wardens, and other prison officials,

were personally involved in the alleged violations.

## II.  DISCUSSION

### A.  Motion To Dismiss

#### 1.  Standard of Law

Rule 12(b)(6) permits a party to move to dismiss a complaint

for failure to state a claim upon which relief can be granted.

Fed. R. Civ. P. 12(b)(6).  The purpose of a motion to dismiss is

to test the sufficiency of a complaint, not to resolve disputed

facts or decide the merits of the case.  Kost v. Kozakiewicz, 1

-2-

F.3d 176, 183 (3d Cir. 1993).  To that end, the Court assumes that all factual allegations in Plaintiffs' pleading are true, and draws all reasonable factual inferences in the light most favorable to Plaintiffs.  Amiot v. Kemper Ins. Co., 122 Fed. Appx. 577, 579 (3d Cir. 2004).  However, the Court should reject "unsupported allegations," "bald assertions," or "legal conclusions."  Id.  A Rule 12(b)(6) motion should be granted to dismiss a pro se complaint only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Estelle v. Gamble, 429 U.S. 97, 106 (1976) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

### 2.  Rule 11

Defendants argue that the Complaint should be dismissed as a sanction pursuant to Fed. R. Civ. P. 11.  Defendants contend that Plaintiff Wilson perpetrated a fraud on the Court when he submitted the original complaint with an attached signature page, representing that all those who signed the page agreed to join the complaint, when in fact Plaintiff Wilson failed to make it clear to the inmates that they were signing on to a lawsuit.

Rule 11 requires that every pleading be signed by the parties filing it, or by the attorney for the parties.  Fed. R. Civ. P. 11(b).  Litigants who sign a pleading represent, inter

-3-

alia, that the pleading "is not being presented for any improper purpose." Id. Section (c) of Rule 11 authorizes the Court to impose "an appropriate sanction" upon finding that "subdivision (b) has been violated" and giving notice and an opportunity to respond. Fed. R. Civ. P. 11(c). Dismissal, however, is only employed as a sanction in rare and limited circumstances, such as when a litigant makes untruthful statements or blatant misrepresentations to the Court, Joiner v. Delo, 905 F.2d 206, 207-08 (8th Cir. 1990), or fails to comply with an order of the Court. Vakalis v. Shawmut Corp., 925 F.2d 34, 36 (1st Cir. 1991).

In this case, it is not clear that a Rule 11 violation occurred. Plaintiff Wilson claims that every signer had knowledge that he and his co-plaintiffs were "petitioning the Court," and the signer who initially alleged that his name was put on the lawsuit "without permission" later admitted that he had signed the document without fully inquiring into its nature. (D.I. 84, Attach.) Plaintiff Wilson argued in his Reply that he duplicated the signature page for his Amended Complaint because he no longer had access to some of his fellow inmates. (D.I. 84, at 3.)

At this juncture, there is nothing to suggest that Plaintiff Wilson presented the Complaint for an "improper purpose." The

-4-

Court cannot say that the conduct of Plaintiff Wilson rises to
the level necessary to employ the drastic sanction of dismissing
the case.  Therefore, the Court will deny that portion of the
Motion To Dismiss seeking dismissal pursuant to Fed. R. Civ. P.
11.

### 3.  Due Process

Any inquiry into whether Plaintiffs' Fourteenth Amendment
Due Process rights have been violated must begin with the
determination of whether the Amended Complaint implicates a
protected liberty interest under the Due Process Clause.  Meachum
v. Fano, 427 U.S. 215, 223 (1976).  A liberty interest can derive
from the Due Process Clause itself or can be created by state
statutes or prison regulations in situations where an "atypical
and significant hardship in relation to the ordinary incidents of
prison life" is imposed.  Sandin v. Conner, 515 U.S. 472, 483-84
(1995).

It is not the case that any adverse change in the conditions
of a prisoner's confinement is sufficient to invoke the
protections of the Clause.  Meachum, 427 U.S. at 224.  "Given a
valid conviction, the criminal defendant has been constitu-
tionally deprived of his liberty to the extent that the State may
confine him and subject him to the rules of its prison system so
long as the conditions of confinement do not otherwise violate

-5-

the Constitution." Id. Specifically, a transfer of a prisoner from one building to another, or even from one institution to another, "is within the normal limits or range of custody which the conviction has authorized the State to impose." Id. at 225.

This Court has repeatedly held that Delaware has created no constitutionally protected liberty interest in a prisoner's security classification, Jackson v. Brewington-Carr, Civ. No. 97-270-JJF, 1999 WL 27124, at *3 (D. Del. Jan. 15, 1999), even when the change in classification is disciplinary. Blizzard v. Watson, 892 F.Supp. 587, 597 (D. Del. 1995). Additionally, inmates do not have a liberty interest in keeping particular prison employment. James v. Quinlan, 866 F.2d 627, 629-30 (3d Cir. 1989).

In order for an imposition on a prisoner's freedom from restraint to be considered "atypical and significant" so as to implicate a state-created liberty interest, the hardship must go beyond "what a sentenced inmate may reasonably expect to encounter as a result of his or her conviction in accordance with due process of law." Griffin v. Vaughn, 112 F.3d 703, 706 (3d Cir. 1997). As a general matter, "discipline by prison officials in response to a wide range of misconduct" does not meet this standard. Id. Even administrative segregation for punitive reasons does not violate a prisoner's liberty interest unless it

-6-

represents "a dramatic departure from the basic conditions . . .
of his sentence."  Id.

Plaintiffs allege that one or more of them has been deprived
of a job, a particular security classification and assignment to
a particular building as discipline and without due process of
law.  As an initial matter, these deprivations do not involve Due
Process Clause liberty interests, and fall well within the normal
range of custody given the State after a valid conviction.  As
discussed, Delaware courts have held that the State has not
created additional liberty interests in these areas.  Given the
policies and procedures of the Delaware prison system, prisoners
do not have a reasonable expectation of employment, a particular
security classification, or a particular building assignment, and
deprivation of any of the above is in no way a "dramatic
departure from the basic conditions" of a prisoner's sentence.

Because Plaintiffs' allegations do not implicate any
protected liberty interests, there is no need for the Court to
consider whether the procedures employed by SCI violated due
process of law.  The Court concludes that Plaintiffs have not
stated a due process claim upon which relief can be granted
against Defendants Hennessy, DeLoy, Warden Kearney, Stozenbach,
and Hollis.  Therefore, the Court will grant the Motion To
Dismiss insofar as it seeks dismissal of the Due Process claim.

### 4.  Equal Protection

Racial classifications within a prison system are evaluated under the same strict scrutiny as racial classifications generally, not the relaxed scrutiny given other prison policies and regulations under the standard set out in <u>Turner v. Safley</u>, 482 U.S. 78 (1987).  <u>Johnson v. California</u>, 543 U.S. 499, 505, 509 (2005).  To be upheld, therefore, racial classifications must be found to be "narrowly tailored measures that further compelling governmental interests."  <u>Johnson</u>, 543 U.S. at 505, (quoting <u>Adarand Constructors, Inc. v. Pena</u>, 515 U.S. 200, 227 (1995)).

To establish racial discrimination, a plaintiff suing under § 1983 must show that the defendant public official acted with a discriminatory purpose as the motivating factor.  <u>Abdul-Akbar v. Department of Corr.</u>, 1995 Del. Ch. LEXIS 38, at *11 (Del. Ch. Mar. 30, 1995).  While "an unequal application of a prison policy or system" can amount to racial discrimination, "conclusory assertions of racism are insufficient."  <u>Hill v. Thalacker</u>, 399 F.Supp. 2d 925, 929 (W.D. Wis. 2005).  Furthermore, to state a claim under § 1983, a plaintiff must allege that the defendant public officials played "an affirmative role in the deprivation of [the plaintiff's] rights."  <u>Pennsylvania v. Porter</u>, 659 F.2d 306, 336 (3d Cir. 1981).

Plaintiffs are not merely making "conclusory assertions of
racism."  The alleged system-wide unequal application of prison
policy claims not only that black inmates are consistently
treated differently from similarly situated white inmates in job
assignments, disciplinary actions, and security classifications,
but also that SCI's Merit Building is racially segregated.

Defendants argue that Plaintiffs have not alleged any
specific incidents of discrimination.  Plaintiffs, however,
specifically claim that Plaintiff Nathan Henry ("Plaintiff
Henry") was sanctioned for a particular infraction in a way that
a white inmate would not have been.  (D.I. 27, at 4.)  Defendants
are incorrect in their assertion that Plaintiffs do not "state
how the discrimination occurs." (D.I. 81, at 13.)  Defendants
also do not cite any support for their proposition that
Plaintiffs must, before having a chance to perform discovery,
name specific white inmates who received better treatment.

Plaintiffs have adequately alleged discriminatory purpose
and personal involvement by Defendants.  Plaintiffs assert that
Defendants refer to the wing of the Merit Building that
predominantly houses black inmates as the "bad side" and to the
other wing as the "good side."  (D.I. 27, at 5.)  Plaintiffs
further allege that Defendants Warden Kearney and Commissioner
Taylor "maintain policies that denies [sic] black inmates equal

-9-

protection." (Id.) "Personal involvement can be shown through
allegations of personal direction or of actual knowledge or
acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d
Cir. 1988). Therefore, the Court concludes that Plaintiffs have
stated a cognizable Fourteenth Amendment equal protection claim
upon which relief can be granted against Defendants Kearney and
Taylor, and will deny the Motion To Dismiss as it pertains to
that claim.

### 5. Excessive Force/Failure to Protect

Defendants challenge Plaintiffs' Eighth Amendment excessive
force claim against Defendant Mears on personal jurisdiction
grounds, claiming that Plaintiffs have not effected service of
process on Mears within the required time period of 120 days
after filing the Complaint. See Fed. R. Civ. P. 4(m).

The Amended Complaint alleges that Mears used excessive
force against Plaintiff Cintra and that Stozenbach failed to
protect Cintra from Mears. A review of the Court file indicates
that Plaintiff Cintra was dismissed from the case for failure to
take any action in the case and for failure to respond to the
Court's Show Cause Order of September 13, 2006. (D.I. 114.)

It is apparent that Cintra chooses not to assert his rights.
Notably, the remaining Plaintiffs do not have standing to bring
the claims on his behalf. "The 'core component'" of the

-10-

requirement that a litigant have standing to invoke the authority
of a federal court "is an essential and unchanging part of the
case-or-controversy requirement of Article III." DaimlerChrysler
Corp. v. Cuno, – U.S.–, 126 S.Ct. 1854, 1861 (2006) (citations
omitted).  "A plaintiff must allege personal injury fairly
traceable to the defendant's allegedly unlawful conduct and
likely to be redressed by the requested relief." Allen v.
Wright, 468 U.S. 737, 751 (1984).  Also, "a plaintiff must
demonstrate standing separately for each form of relief sought."
DaimlerChrysler Corp., 126 S.Ct. at 1867 (citations omitted).

     The only way these claims can proceed is if Plaintiffs have
third party standing.  The Third Circuit determines the
appropriateness of third-party standing with a three part test.
Nasir v. Morgan, 350 F.3d 366, 376 (3d Cir. 2003) (citations
omitted).  "To successfully assert third-party standing: (1) the
plaintiff must suffer injury; (2) the plaintiff and the third
party must have a 'close relationship'; and (3) the third party
must face some obstacles that prevent it from pursuing its own
claims." Id.

     There are no allegations that the remaining Plaintiffs
suffered an injury as a result of an Eighth Amendment violation
or that they have a close relationship with Cintra.  Nor are

-11-

there any allegations that Cintra faces some obstacle in pursuing
his claims.

The Plaintiffs lack standing to pursue the excessive force
and failure to protect claim.  Therefore, the Court will grant
the Motion To Dismiss the excessive force against Mears and the
failure to protect claim against Stozenbach for lack of standing.

### 6.  Qualified Immunity

Defendants assert that they are protected from civil
liability by the doctrine of qualified immunity.  Government
officials are entitled to qualified immunity as long as they do
not "violate clearly established statutory or Constitutional
rights of which a reasonable person would have known."  Harlow v.
Fitzgerald, 457 U.S. 800, 818 (1982).  Once a Constitutional
violation can be established, the relevant question becomes
whether reasonable officials in the defendants' positions could
have believed their conduct to be lawful.  Bounds v. Taylor, 77
Fed. Appx. 99, 105 (3d Cir. 2003).

Courts have been reluctant to grant officials qualified
immunity against Fourteenth Amendment equal protection claims.
See Gibson v. Superintendent of N.J. Dep't of Law and Pub. Safety
- Division of State Police 411 F.3d 427, 441 (3d Cir. 2005)
(denying state troopers qualified immunity because "it has long
been a well-settled principle that the state may not selectively

-12-

enforce the law against racial minorities"). The right to be free of racial discrimination is a clearly established Constitutional right. Assuming Plaintiffs' allegations to be true, reasonable officials in Defendant Taylor and Kearney's positions could not have believed lawful their maintenance of and acquiescence to racially discriminatory policies.

The Court concludes that the allegations in the Amended Complaint, viewed in the light most favorable to the Plaintiffs, sufficiently support assertions of clearly established constitutional rights, and thus Defendants Taylor and Kearney are not entitled to qualified immunity. Therefore, the Court will deny that portion of the Motion To Dismiss seeking dismissal on the basis of qualified immunity.

### 7.   Eleventh Amendment Sovereign Immunity

Defendants correctly argue that the doctrine of sovereign immunity bars suits for monetary damages against state employees in their "official capacities," absent waiver or Congressional override. Kentucky v. Graham, 473 U.S. 159, 169 (1985). There is no evidence that § 1983 intended to effect a Congressional override of state sovereign immunity. The statute has been held not to "provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." Will v. Michigan Dep't of State Police, 491 U.S. 58, 66 (1989).

§ 1983 authorizes suits against "persons," and a suit against a
state official is "no different than a suit against a state
itself." Id. at 71.   "The state itself [is not] a person that
Congress intended to be subject to liability." Id. at 68.   Also,
there is no indication that the State of Delaware has waived or
abrogated its sovereign immunity with respect to § 1983 claims.
Therefore, the Court will grant the Motion To Dismiss and dismiss
the official capacity claims seeking monetary damages raised
against Defendants.

### B.  Motion To Strike

Defendants argue that Plaintiffs' Memorandum of Points and
Authorities In Support Of Their Opposition To Defendants' Motion
To Dis[miss]/Summary Judgment, Amended Motion Support [sic]
should be stricken as an improper sur-reply to Defendants' Motion
To Dismiss.  (D.I. 102.)   Alternatively, Defendants argue that if
the filing is a reply to Defendants' answering brief in opposi-
tion to Plaintiffs' Motion To Amend, it should be stricken
because it "adds nothing new in support of [Plaintiffs'] claims."
(D.I. 102, at 1.)

Construing the pro se filing liberally, the Court concludes
that it was intended as a reply in support of Plaintiffs' Motion
To Amend.   As such, it clarifies contentions made in that Motion

-14-

and responds to the arguments in Defendants' opposing brief.
Accordingly, the Court will deny Defendants' Motion To Strike.

### C.    Motion To Amend

Plaintiffs' Motion To Amend recites several new allegations
of unfair treatment, including moving Plaintiff Wilson from the
Merit Building without cause and in retaliation for filing this
and other civil lawsuits.  (D.I. 85.)  The retaliation claim
names only Deputy Warden Deloy.  Defendants argue that allowing
such amendment would be futile because, in Defendants' view,
Plaintiffs have not stated any cognizable Constitutional claims.

The Court must deny leave to amend if such an amendment
would be futile.  Lorenz v. CSX Corp., 1 F.3d 1406, 1413-14 (3d
Cir. 1993).  "In determining whether a proposed amendment is
futile, the Court should apply the same standards as are applied
to Rule 12(b)(6) motions to dismiss."  Satellite Fin. Planning
Corp. v. First Nat'l Bank, 646 F. Supp. 118, 120 (D. Del. 1986).
The proposed amendment arguably asserts due process claims
identical to the claims in the original complaint, and  adds a
retaliation claim.  Because the Court will dismiss the original
complaint's due process claims, it concludes that Plaintiffs may
not amend to add additional due process claims that are
substantively the same.

Defendants argue that Plaintiffs have not stated a cognizable claim for retaliation because they cannot satisfy the three-prong test established by Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001).  To allege retaliation, a prisoner must show that (1) "the conduct which led to the alleged retaliation was constitutionally protected"; (2) "he suffered some 'adverse action' at the hands of prison officials," one "sufficient to deter a person of ordinary firmness from exercising his constitutional rights," see also Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000); and (3) a causal link between the conduct and the adverse action.  Rauser, 241 F.3d at 333. Defendants claim that Plaintiffs have alleged none of these. Yet, the Motion to Amend clearly alleges that the conduct leading to the retaliation was Plaintiff Wilson's exercise of his constitutionally protected right of access to courts (D.I. 85, at 2), and pleads an adverse action in the form of transfer from the Merit Building to a housing unit with far fewer privileges. While Defendants are correct that such a transfer does not itself amount to a constitutional violation, the Court cannot conclude that a transfer to more restrictive housing would not deter inmates from exercising their right of access to the courts.  The Court further concludes that the Motion to Amend sufficiently

alleges a causal link between the conduct and the alleged adverse action.

Accordingly, the Court will grant Plaintiffs' Motion To Amend only insofar as it introduces a retaliation claim against Defendant Deloy.  The Court will deny the Motion with respect to any new due process claims.

### D.   Cross Motion For Summary Judgment

#### 1.   Standard of Law

The Court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party bears the burden of proving that no genuine issue of material fact exists.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986).  "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."  Horowitz v. Federal Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted).  If the moving party has demonstrated an absence of material fact, the

-17-

nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The Court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

### 2. Facts

Plaintiff Wilson filed a Cross Motion For Summary Judgment (D.I. 103) arguing that since the filing of the Complaint he has been moved to the Delaware Correctional Center ("DCC"). Plaintiff Wilson alleges he lost his tutoring job and cannot earn good-time credits. Plaintiff Wilson claims his transfer to DCC

-18-

is in retaliation for filing grievances.  The Cross Motion For
Summary Judgment contains no supporting case law or evidence and
basically contains the same assertions as the Motion To Amend the
complaint.

Defendants correctly respond that Plaintiff Wilson has no
liberty interest in his security classification, employment or
housing location.  (D.I. 115.)  Defendants point out that the
Motion For Summary Judgment is almost factually identical to
Plaintiffs' Motion To Amend.

Defendants submitted with their response the Affidavits of
Patricia S. Ditto and Ron Hosterman.  The affidavits indicate
that Plaintiff Wilson was moved from the SCI Merit Building to a
medium security building, and that due to the transfer Plaintiff
Wilson had to leave his job as an educational assistant.  (D.I.
115, Ditto aff.)  Plaintiff Wilson was offered the opportunity to
work either in the SCI kitchen or be transferred to the DCC
Greentree program and he refused to make a choice.  Id.  It was
decided that Plaintiff Wilson would be transferred to the
Greentree program and he was transferred on June 5, 2006.  Id.
Plaintiff Wilson is currently enrolled in the Greentree program
and a computer class and has the ability to earn good time
credits.  Id. at Hosterman aff.

### 3.  Analysis

Plaintiff Wilson's argues that Defendants do not state the reason for his transfer to DCC.  (D.I. 122.)  He argues he was moved without due process and in violation of his right to equal protection.  Plaintiff Wilson argues there is no reason for his transfer other than for retaliation.

Plaintiff Wilson, as the moving party, has the burden of proving that no genuine issue of material fact exists.  He failed to meet his burden.  According to Plaintiff Wilson, at issue is the reason for his transfer to DCC.  Plaintiff Wilson argues, but provides no facts, that retaliation was the cause for his transfer.  Defendants provided to the Court an affidavit averring that the cause for the transfer was Plaintiff Wilson's failure to make a choice to either work in the SCI kitchen or attend the DCC Greentree program.  When no choice was made, Plaintiff Wilson was transferred to the DCC Greentree program.

Clearly, there remains a genuine issue of material fact. Summary judgment is inappropriate and the Court will deny Plaintiff Wilson's Motion.

### III.  CONCLUSION

Accordingly, the Court will grant Defendants' Motion To Dismiss Plaintiffs' Fourteenth Amendment due process claims against Defendants Hennessy, DeLoy, Kearney, Stozenbach, and

-20-

Hollis, Plaintiffs' Eighth Amendment excessive force and failure to protect claims against Defendants Mears and Stozenbach, and all claims for monetary damages against Defendants Taylor and Kearney in their official capacities.  The Court will deny Defendants' Motion To Dismiss on the basis of Rule 11.  The Court will deny Defendants' Motion To Dismiss Plaintiffs' Fourteenth Amendment equal protection claims against Defendants Taylor and Kearney in their personal capacities.  The Court will deny Defendants' Motion To Strike Plaintiff's Sur-reply To Defendants' Motion To Dismiss.  The Court will grant Plaintiff Wilson's Motion To Amend insofar as it introduces a claim for retaliation against Defendant Deloy and deny it with respect to any new due process claims.  Finally, the Court will deny Plaintiff Wilson's Motion For Summary Judgment.  The claims that remain are the equal protection claims against Defendants Taylor and Kearney in their personal capacities, and the retaliation claim against Defendant Deloy in his personal capacity.  An appropriate Order will be entered.