# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

JAMES WILSON, et al         )
                                  )
            Plaintiff,       )
                                  )
        v.              )      C.A. No. 05-399-JJF
                                  )
STANLEY TAYLOR, et al.     )
                                  )      JURY TRIAL REQUESTED
                                  )
                                  )
           Defendants.     )

# DEFENDANTS' OPENING BRIEF
# IN SUPPORT OF THE MOTION FOR SUMMARY JUDGMENT

**DEPARTMENT OF JUSTICE**
**STATE OF DELAWARE**

*/s/ Stacey Xarhoulakos*
Stacey Xarhoulakos (#4667)
Deputy Attorney General
820 N. French Street, 6th Floor
Wilmington, DE  19801
(302) 577-8400
*Attorney for Defendants*

Dated: July 20, 2007

# TABLE OF CONTENTS

Table of Citations …………………………………………………………….     iii

Nature and Stage of the Proceedings …………………………………………     1

Summary of the Argument …………………………………………………....     3

Statement of the Facts ………………………………………………………..     5

Argument ……………………………………………………………………...     9

    I.      Defendants are Entitled to Dismissal of Plaintiff's Claims as a
           Matter of Law Because Plaintiffs Have Failed to Exhaust Their     10
           Administrative Remedies Under the PLRA.

    II.     Plaintiffs Cannot Prove a Claim Pursuant to 42 *U.S.C.* § 1983
           Because They Have Not Been Deprived of the Right to Equal     15
           Protection.

    III.    Defendants Cannot Be Held Liable Under § 1983 Absent
           Personal Involvement and Based Solely on Their Supervisory     26
           Responsibilities.

    IV.    Defendant Deloy Did Not Retaliate Against Plaintiff Wilson.     28

    V.     Plaintiffs Have Not Suffered Any Physical Injury and Are
           Precluded from Recovering Compensatory Damages.     32

    VI.    Defendants Are Immune From Liability in Their Individual Capacities     33
           Pursuant to the Doctrine of Qualified Immunity**.**

Conclusion     35

## TABLE OF CITATIONS

*Abdul-Akbar v. DOC*, 1995 WL 214348, at *3 (Del. Ch.)…………………….…..    15

*Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 227 (1995)…………………    15

*Allah v. Al-Hafeex*, 226 F.3d 247, 250 (3d Cir. 2000)……………………………    32

*Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)…………………………...    28

*Anderson v. Greighton*, 483 U.S. 635, 640 (1987)………………………………    33

*Anderson v Liberty*, 477 U.S. 242, 248 (1986)…………………………………...    9

*Atum-Ra v. Ortiz*, 2006 WL 1675091 (D.N.J.)…………………………………...    10

*Booth v. Churner*, 206 F.3d 289, 291 (3d Cir. 2000), *aff'd* 531 U.S. 956 (2000)…    12,10

*Brookins v. Williams*, 402 F.Supp.2d 508, 512 (D. Del. 2005)…………………..    26

*Brown v. Leftridge*, 2000 WL 1780234 (E.D. Pa.)………………………………..    25

*Carter v. Exxon Company USA*, 177 F.3d 197, 202 (3d Cir. 1999)……………...    9

*Celetox Corp. v. Carter*, 477 U.S. 317, 322-23 (1986)…………………………..    16,9

*Clark Cty. School Dist. v. Breeden*, 532 U.S. 268, 273 (2001)…………………...    30

*Crawford-El v. Britton*, 523 U.S. 574, 600 (1998)………………………………    26

*Dickens v. Taylor*, 464 F.Supp.2d 341, 354-55 (D. Del. 2006)………..………...    24

*Fatir v. Dowdy*, 2002 WL 2018824 (D. Del.)……………………………………    15,24

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)…………………………………    14

*Jones v Maher*, 131 Fed. Appx. 813, 815 (3d Cir. 2005)…………………………    33

*Lee v. Mihalich*, 847 F.2d 66, 69 (3d Cir. 1988)…………………………………    10

*Logue v. Chatham Cty. Detention Ctr.*, 152 Fed. Appx. 781, 783 (11th Cir.
2005)……………………………………………………………………………    33

*Meachum v. Fano*, 427 U.S. 215, 224-225 (1976)………………………………..    31

*Mitchell v. Horn*, 318 F.3d 523, 531 (3d Cir. 2003)……………………………... 10

*Morrisson v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001)…………………... 15

*Nyhuis v. Reno*, 204 F.3d 64, 67 (3d Cir. 2000)…………………………………… 10,14

*Ostrander v. Horn*, 145 F.Supp.2d 614, 619 (M.D. Pa. 2001)…………………... 32

*Pennsylvania v. Porter*, 659 F.2d 306, 336 (3d Cir. 1981)……………………… 26

*Personnel Adm'r v. Feeney*, 442 U.S. 256, 279 (1979)…………………………… 25

*Porter v. Nussle*, 534 U.S. 516, 524 (2002)……………………………………… 12

*Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (CA7 Wis. 2002)…………………… 12

*Rauser v. Horn*, 241 F.3d 330 (3d Cir. 2001)…………………………………… 28,29

*Riley v. Jeffes*, 777 F.2d 143, 145 (3d Cir. 1985)………………………………... 15

*Rode v. Dellarciprete*, 845 F.2d 192, 197 (3d Cir. 1999)………………………... 26

*Ryan v. Burlington County*, 889 F.2d 1286, 1292 (3d Cir. 1989)……………….. 34

*Sample v. Diecks*, 85 F.2d 1099, 1117-18 (3d Cir. 1985)………………………... 26

*Spencer v. Kelchner*, 2007 WL 88084, at *7 (M.D. Pa)…………………………. 26

*Vick v. Haller*, 512 A.2d 44 (1996)……………………………………………… 33

*Waples v. Kearney*, 2005 WL 724175, at *4 (D. Del.)…………………………... 32

*Wolf v. McDonnell*, 418 U.S. 539, 556 (1974)…………………………………… 15

*Woodford v. Ngo*, 126 S.Ct. 2378, 2385 (2006)………………………………… 12

## Stautes, Rules, and Other Authority

42 *U.S.C.* § 1983………………………………………………………… *Passim*

42 *U.S.C.* § 1997e(a)…………………………………………………………... 10

42 *U.S.C.* § 1997e……………………………………………………………... 32,11,13

11 *Del. C.* § 4217……………………………………………………………… 22

Federal Rule of Civil Procedure 56(c).................................................. 9

## NATURE AND STAGE OF THE PROCEEDNGS

Plaintiffs are inmates currently housed at the Delaware Correctional Center ("DCC") in Smyrna, Delaware and the Sussex Correctional Institution ("SCI") in Georgetown, Delaware. This action was originally filed on June 15, 2005, pursuant to 42 *U.S.C.* § 1983, by James A. Wilson ("Plaintiff Wilson") along with thirty inmates incarcerated at SCI. (D.I. 1). Plaintiffs filed an Amended Complaint on June 22, 2005. (D.I. 3). On July 18, 2005, Wilson filed for class certification of the action requesting he be named as the representative of the class. (D.I. 8). The motion for class certification was denied by the Court on August 11, 2005. (D.I. 14). The Amended Complaint was dismissed by the Court as frivolous following a 28 *U.S.C.* § 1915 review on October 11, 2005. (D.I. 23). Plaintiffs filed a Second Amended Complaint on November 7, 2005 and service was ordered for Defendants Commissioner Stanley Taylor, Warden Rick Kearney, Lt. Hollis, Sgt. Mears, Lt. Hennessy, Deputy Warden Mike DeLoy, and Cpl. J. Stolzenbach. (D.I. 35).

Plaintiffs Eldon Potts and James Wilson each filed a Motion for Temporary Restraining Order on September 30, 2005. (D.I. 20, 52). These were denied by the Court on October 11, 2005 and February 2, 2006 respectively. (D.I. 22, 54). Plaintiff Wilson filed a Renewed Motion for Temporary Restraining Order on November 10, 2005 (D.I. 29) which was also denied by the Court on December 12, 2005. (D.I. 36).

Defendants filed a Motion to Dismiss on April 18, 2006. (D.I. 80, 81). Plaintiff Wilson filed a Motion for Summary Judgment on July 11, 2006. (D.I. 103). The Court issued an Order and Opinion on these and other outstanding motions on December 14, 2006. (D.I. 125, 126). The Court dismissed numerous plaintiffs without

1

prejudice for failure to respond to a Show Cause Order; dismissed Plaintiffs' Fourteenth Amendment due process, excessive force, and failure to protect claims; permitted Plaintiff Wilson to add a retaliation claim against Defendant Deloy in his personal capacity; dismissed Plaintiffs' claims against Defendants Taylor and Kearney in their official capacities; and allowed Plaintiffs' Fourteenth Amendment equal protection claim against Defendants Kearney and Taylor in their personal capacities to proceed. (D.I. 125). Following this order, the remaining claims are "the equal protection claims against Defendants Taylor and Kearney in their personal capacities, and the retaliation claim against Defendant Deloy in his personal capacity." (D.I. 125, at 21).

On June 29, 2007, Stipulations of Dismissal were entered for Plaintiffs Nathan Henry, Frank Williams, and Eldon Potts. (D.I. 183-185). The remaining Plaintiffs are James Wilson, Anthony Morris, Jerome Green, James Johnson, Roderick Brown, and Jose Serpa ("Plaintiffs").

This is the Defendants' Motion for Summary Judgment.

## SUMMARY OF THE ARGUMENT

I.      Federal law requires a prisoner who files an action with respect to prison conditions to fully exhaust administrative remedies before filing an action in federal court pursuant to 42 *U.S.C.* § 1983. Before filing the instant action, Plaintiffs did not exhaust administrative remedies on the allegations of racial discrimination or retaliation and summary judgment should be granted in favor of all Defendants.

II.     Plaintiffs cannot prove a claim pursuant to 42 *U.S.C.* § 1983 because they have not been deprived of the right to equal protection. Plaintiff cannot prove they were treated differently than similarly situated white inmates, nor can they prove intentional or purposeful discrimination by Defendants and their claims cannot survive summary judgment.

III.    A plaintiff filing a lawsuit pursuant to 42 *U.S.C.* § 1983 is required to show that the defendants had personal involvement in the alleged wrongs. Plaintiffs have not established any personal involvement by Defendants. Plaintiffs' cannot maintain an action against Defendants absent personal involvement and summary judgment should be granted in their favor.

IV.     Plaintiff Wilson cannot establish his claim for retaliation against Defendant Deloy because the alleged conduct was not constitutionally protected and there is no causal connection between any constitutionally protected conduct by Wilson and his transfer. Summary judgment should be granted in favor of Defendant Deloy.

V.     Plaintiffs must have suffered some physical injury for their claims to be actionable.  Plaintiffs have not established that they suffered any injury at all and they can not withstand summary judgment.


VI.    Defendants are immune from liability in their official capacity and summary judgment in favor of Defendants is appropriate.

## STATEMENT OF FACTS

**Equal Protection Claim**

Plaintiffs' remaining claims are broad assertions that African-American and Caucasian inmates are treated differently at SCI. (D.I. 2, *passim* and D.I. 125). Plaintiffs' allege that the Merit Building at SCI is racially segregated, that black inmates are denied equal protection in jobs, classification, and disciplinary proceedings, and that Defendants "maintain policies that denies [sic] black inmates equal protection." (D.I. 27, *passim*). The Complaint provides few specific examples in support of the allegations. The most specific example alleges that Nathan Henry was treated unfairly in a disciplinary write-up because of his race. (D.I. 27, at 4) Nathan Henry has dismissed his claims against Defendants and is no longer a party to this action. (D.I. 183). The Complaint does not contain any specific examples of racial discrimination against any of the remaining Plaintiffs. In discovery requests, Defendants asked Plaintiffs to provide a detailed explanation of how they were personally discriminated against. Plaintiffs Brown and Green failed to respond entirely. Plaintiffs Serpa, Johnson and Morris simply stated they agreed with the allegations in the Complaint. (D.I. 162, 167, 169 – Responses to Interrogatories). The only specifics alleged by Plaintiff Wilson are that he was moved from the Merit building to ASDA and not allowed to have his job back, while a white inmate was moved from Merit to ASDA and was allowed to return. (D.I. 164 – Wilson Interrogatory Responses). As discussed in detail under the retaliation facts below, Plaintiff Wilson's move from the Merit building had nothing to do with his race.

Plaintiffs Brown, Johnson, and Morris have not filed, let alone exhausted, any administrative grievances related to the allegations of racial discrimination. Plaintiff

Green filed two duplicate grievances after the filing of the Complaint, but did not appeal to a higher level. (Exhibit "A" – Green grievances). Plaintiff Wilson filed several grievances alleging discrimination by a corporal who is no longer a defendant to this action, prior to the filing of the Second Amended Complaint, but after the filing of the first Complaint. Plaintiff Wilson filed one grievance requesting a remedy for discrimination by the corporal and his superiors on the same day of the filing of the Second Amended Complaint. Plaintiff Wilson also filed two more grievances against the corporal after the filing of the Second Amended Complaint. (Exhibit "B" – Wilson grievances). Plaintiff Serpa filed a grievance in November of 2004 alleging discrimination by a correctional officer who is not a defendant in this action. Serpa accepted an informal resolution of that grievance. (Exhibit "C" – Serpa grievance).

**Plaintiff Wilson's Retaliation Claim**

Plaintiff Wilson was transferred from the Merit building on March 29, 2006. In May of 2006, he moved to amend the Complaint to add a retaliation claim against Defendant Deloy. (D.I. 85).

Prior to March 29, 2006, Plaintiff Wilson was housed in the Merit Building and worked as an education tutor. The Merit Building at SCI is considered to be the best housing on the compound and, as such, typically houses only the most well behaved inmates. Certain jobs can only be held by an inmate if he is housed in the Merit Building, this includes Wilson's job as an education tutor. The Merit Building holds inmates classified as either minimum or medium security. (Exhibit "E" – Deloy Affidavit).

Wilson was transferred from the Merit Building on March 29, 2006 to ASDA (Administrative Segregation). (Exhibit "E" – Deloy Affidavit). Wilson was moved from the Merit Building pending the outcome of an investigation.[1] (Exhibits "D", "E", and "H" – Ditto, Deloy, and Kearney Affidavits). The investigation was initiated because Wilson and anther inmate became involved in a situation that pitted one Merit staff member against another. (Exhibit "E" – Deloy Affidavit). Wilson was transferred from ASDA to the Key South Building on April 4, 2006. Wilson was at all times entirely aware that he was transferred because of the investigation. (Exhibit "G" – Wilson Dep. 44:15-20, 53:6-11). Wilson was interviewed as a part of the investigation, but refused to provide the investigator with any information. (*Id*. at 56). Upon conclusion of the investigation, Warden Rick Kearney reviewed the findings and determined that Wilson could not return to the Merit Building. (Exhibit "H" – Kearney Affidavit).

Because Wilson was classified as medium security level, officials had limited options for his placement. (Exhibit "D"— Ditto Affidavit). He was told he could be placed in the Medium Building and work in the kitchen or be classified to the Greentree program at DCC. Wilson refused to make a choice. (Exhibit "G" – Wilson Dep. 53:12-24, 54:1-4). Thus, he was classified to the Greentree program at SCI. This decision was made primarily because Wilson had made numerous previous requests to be admitted to the SCI. Greentree program. (Exhibit "D" – Ditto Affidavit, Exhibit "G" – Wilson Dep. 27:8-21). Wilson was not eligible for the SCI Greentree program because it is federally funded and federal grant requirements provide that inmates must be within

---

[1] A redacted version of the investigator's report is attached hereto as Exhibit "F". The report has been redacted for the protection and privacy of correctional staff, investigators and confidential informants and the protection of the manner and means of an internal institutional investigation. A full copy of the report can be made available to the Court should it be necessary for an *in camera* review.

one year of their release date to be enrolled, which Wilson was not. (Exhibit "D" – Ditto Affidavit, Exhibit "G" – Wilson Dep. 27:17-21). The DCC Greentree program is not subject to such federal requirements. (Exhibit "D" – Ditto Affidavit).

**<u>ARGUMENT</u>**

Federal Rule of Civil Procedure 56(c) permits a Court to grant summary judgment, "if the pleadings, depositions, answers to interrogatories, and admissions on

file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The United States Supreme Court holds that a court must enter summary judgment, "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Carter*, 477 U.S. 317, 322-23 (1986).

To obtain summary judgment the moving party must demonstrate that he has met the standards of Rule 56(c). *Carter v. Exxon Company USA*, 177 F.3d 197, 202 (3d Cir. 1999). The summary judgment standard requires that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis in original). Thus, only disputes that affect the outcome of a lawsuit will properly preclude the grant of summary judgment. *Id.*

"At the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. In deciding a motion for summary judgment "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Id.* at 252.

**I.      Defendants Are Entitled To Dismissal Of Plaintiffs' Claims As A Matter Of Law Because Plaintiffs Have Failed To Exhaust Their Administrative Remedies Under the PLRA.**

Congress requires a prisoner to exhaust administrative remedies before filing a § 1983 action with respect to prison conditions. This requirement is codified in 42 *U.S.C.* § 1997e(a). Prison conditions are defined to include the physical environment in which a prisoner lives and the services provided to him. *Booth v. Churner*, 206 F.3d 289, 291 (3d Cir. 2000), *aff'd*, 531 U.S. 956, (2000). There is no futility exception to exhaustion and prisoners must exhaust administrative remedies even where the process would not provide them with the remedy they are seeking. *Nyhuis v. Reno*, 204 F.3d 65, 67 (3d Cir. 2000); *Booth*, 206 F.3d at 294-295. A prisoner's allegation of discrimination is a challenge to prison condition requiring exhaustion under the Prisoner Litigation Reform Act ("PLRA"). *Jones v. Maher*, 131 Fed. Appx. 813, 815 (3d Cir. 2005). As is a prisoner's allegation of retaliation. *Mitchell v. Horn*, 318 F.3d 523, 531 (3d Cir. 2003).

In *Atum-Ra v. Ortiz*, 2006 WL 1675091 (D.N.J.)(Exhibit "Q" – Unreported Decisions ), an incarcerated Plaintiff attempted to pursue an equal protection claim in federal court without first filing a grievance alleging racial discrimination. The District Court of New Jersey held that "[b]ecause inmates cannot exhaust their administrative remedies with regards to discrimination claims unless they first raise the issue of discrimination in the administrative forum, Plaintiffs' claims of discrimination against Defendant must be dismissed." *Id*. at 3 (citing *Logue v. Chatham Cty. Detention Ctr.*, 152 Fed. Appx. 781, 783 (11th Cir. 2005).

### A.    Plaintiffs Morris, Brown, Green, and Johnson.

Plaintiffs Morris, Brown, and Johnson did not file any grievances pertaining to the allegations in their Complaint. Plaintiff Green did not file any grievances pertaining to the allegations in the Complaint before bringing the action to federal court. A search of grievances during the relevant time period preceding the filing of the Complaint did not disclose any grievances filed by Plaintiffs Morris, Brown, Green, or Johnson that were relevant to claims of racial discrimination.

Plaintiff Green filed a grievance on February 11, 2006 requesting he be allowed to return to the Merit building. (Exhibit "A"). He filed an almost identical grievance three days later on February 14, 2006 and also alleged he was discriminated against by being transferred to another building but requested the same remedy, that he be returned to the Merit building. (Exhibit "A"). The grievances were filed well after the Second Amended Complaint. The first grievance was rejected as Green non-grievable and the second as duplicate grievances both on the same day both requesting he be allowed back in the Merit building with his previous assignment. The original grievance was rejected as a non-grievable issue and not appealed. Section 1997e provides that an action shall not be brought by a prisoner, with respect to prison conditions, "*until* such administrative remedies as are available are exhausted." 42 *U.S.C.* 1997e. Green was required to exhaust his administrative remedies prior to filing his § 1983 suit and he did not even file any relevant grievances until after the suit was filed.

Plaintiff Johnson alleges he wrote letters to various defendants, (Exhibit "I" – Johnson Dep. 20-21). Plaintiff Johnson wrote a letter to Warden Rick Kearney in January of 2007, nearly two and a half years after the litigation was initiated. The letter contains no suggestion that Johnson was personally discriminated against. (Exhibit "J").

11

Regardless, this letter came well after the litigation began and it is not the proper channel for inmates to pursue their grievances and the PLRA requires that "all available administrative remedies must be pursued." *Porter v. Nussle*, 534 U.S. 516, 524 (2002). "Failure to exhaust such remedies mandates dismissal of the inmate's claim. *Booth*, 532 U.S. at 739. Proper exhaustion of administrative remedies is required, this "mean using all the steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits). *Woodford v. Ngo*, 126 S.Ct. 2378, 2385 (2006) (citing *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (CA7 Wis. 2002). The grievance process is established by prison officials to set up a system by which inmate grievances may be addressed through the appropriate channels. Plaintiff Johnson did not exhaust administrative grievances by sending a letter in 2007.

### B.    Plaintiff Serpa.

Plaintiff Serpa filed a grievance in November of 2004 alleging Officer Kuratnick (who is not a defendant in this action) made a racial statement against him, but he accepted an informal resolution of this grievance on December 8, 2004 and did not appeal it to a higher level. (Exhibit "C"). Serpa was required to exhaust his administrative remedies. An informal resolution shows that the grievance system is serving its purpose and resolving disputes internally without having to proceed to federal litigation. Serpa did not file any other grievances relevant to the allegations in the Complaint.

### C.    Plaintiff Wilson

Plaintiff Wilson filed two grievances on the same date, September 19, 2005, alleging Corporal Stolzenbach was picking on him because of his race. (Exhibit "B", grievance #17878 and #17639). One was rejected as duplicative and the other as non-grievable as the requested remedy was not within the scope of the grievance procedure. The decisions were not appealed and Cpl. Stolzenbach is no longer a defendant in this action.

Plaintiff Wilson also filed a grievance alleging racial discrimination against Cpl. Stolzenbach on the very same day he filed his Second Amended Complaint, November 7, 2005. (Exhibit "B", #20008). This grievance requested a remedy against Cpl. Stolzenbach and his superiors. The date stamp on the grievance indicates that it wasn't received by the chairperson until November 13, 2005. (Exhibit "B"). Section 1997e requires that Wilson exhaust his administrative remedies prior to filing his § 1983 suit. His filing of the grievance on the very same day of the filing of the Second Amended Complaint is clearly a pretext and not an attempt to fully comply with exhaustion requirements. Finally, Wilson filed an additional two grievances alleging discrimination by Cpl. Stolzenbach in February of 2006. (Exhibit "B", #23696 and #23695). These were filed well after the filing of the original Complaint in June of 2005 and after the Second Amended Complaint in November of 2005 and only against Cpl. Stolzenbach.

Wilson did not file any grievances related to the allegations of retaliation in his amendment to the Complaint. (D.I. 85).

**D.     All Plaintiffs**

13

Some Plaintiffs stated in their Interrogatory responses stated that they did not file a grievance because it was a non-grievable issue. There is no futility exception to the exhaustion requirement of the PLRA, so even if Plaintiffs believed their grievance would be rejected or denied, they still had to comply with the mandatory terms of the inmate grievance process. *Nyhuis v. Reno*, 204 F.3d 65, 67 (3d Cir. 2000)(Plaintiff failed to initiate, and therefore exhaust, available administrative remedies).

In *Fatir v. Dowdy*, 2002 WL 2018824 (D. Del.)(Exhibit "Q"), the Court found a similar argument by a plaintiff unpersuasive. The Court held that "although some courts have found substantial compliance where an inmate was told a claim was not grievable, (citation omitted) this has generally only occurred where the prisoner actually filed a grievance or some informal complaint and is subsequently told by the grievance board or some prison official that the claims are not grievable." *Id*. The court reasoned that "it makes little sense to find substantial compliance where an inmate simply assumes that a claim is not redressable through a grievance procedure . . . to hold otherwise would permit inmates to satisfy exhaustion requirements based solely upon their own beliefs regarding prison procedures. *Id.* Here, Plaintiffs assumption that their grievances would be rejected as non-grievable is not sufficient compliance with the exhaustion requirements of the PLRA.

Plaintiffs pursue their unsupported allegations against Defendants without timely presenting their claims for an administrative remedy. At best, it can be said that Plaintiff Wilson exhausted his administrative remedies as to the equal protection claim; even then Defendants argue exhaustion was only as to Cpl. Stolzenbach or after he filed his action in federal court. He certainly did not exhaust his retaliation claim filed against

14

Defendant Deloy. Defendants are entitled to summary judgment because plaintiffs failed to timely file and/or exhaust their administrative remedies as required by the Prison Litigation Reform Act ("PLRA").

## II. Plaintiffs Cannot Prove a Claim Pursuant to 42 *U.S.C.* § 1983 Because They Have Not Been Deprived of the Right to Equal Protection.

To establish a civil rights claim under 42 *U.S.C.* § 1983 a plaintiff must prove that (1) the conduct complained of was committed by a person acting under color of state law; and (2) the plaintiff was deprived of a right or privilege secured by the Constitution or the laws of the United States. *Riley v. Jeffes*, 777 F.2d 143, 145 (3d Cir. 1985).

The Equal Protection Clause of the Fourteenth Amendment protects prisoners from invidious discrimination based on race. *Wolf v. McDonnell*, 418 U.S. 539, 556 (1974). "Racial classifications in prisons are evaluated under the same strict scrutiny as racial classifications generally and thus must be narrowly tailored to further compelling government interests. *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 227 (1995). "Prison officials violate the equal protection clause of the Fourteenth Amendment with a policy of deliberate racial discrimination in the administration of the prison." *Abdul-Akbar v. DOC*, 1995 WL 214348, at *3 (Del. Ch.)(Exhibit "Q")(citing *Wolf*, 418 U.S. at 556). "In order to raise a valid equal protection claim, a plaintiff must show that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Dickens v. Taylor*, 464 F.Supp.2d 341, 354-55 (D. Del. 2006)(citing *Morrisson v. Garraghty*, 239 F.3d 648, 654 (4thCir. 2001).

15

Defendants do not dispute that they are persons acting under color of state law.  Plaintiffs, however, cannot establish that they have been deprived of the right to equal protection by Defendants.  Plaintiffs have produced no evidence of racial discrimination at SCI, but instead rely on their own observations and draw presumptive conclusions of racial discrimination.

At this stage of the proceedings, Plaintiffs must meet their burden and come forth with affirmative evidence to support their claims, rather than continue to simply rely on their own subjective conclusions.  Plaintiffs cannot rest upon the mere allegations in their Complaint, but must set forth specific facts through evidence to establish a genuine issue for trial.  *Celotex*, 477 at 322.  Because none of the Plaintiffs can establish that they have been denied of the federal right to equal protection, their claims must be dismissed and summary judgment should be granted in favor of Defendants.

Defendants will address each of the Plaintiffs' allegations in turn.

### A.    Plaintiff Jerome Green

Plaintiff Green does not have any personal claims of discrimination against Defendants.  (Exhibit "K" – Green Depo. 11:16-20).  Indeed, in Green's deposition, he stated he would dismiss the action because he did not have any personal claims of discrimination against Defendants Taylor or Kearney.  (*Id*. at 12:5-8).  When presented with the dismissal, however, he refused to sign it.  (*Id*. at 12:9-14).  Plaintiff Green also did not respond to discovery requests filed by Defendants where he was specifically asked to provide a detailed explanation of his claims of racial discrimination.

16

Plaintiff Green has presented no evidence for his claims against Defendants and Plaintiff Green has not established that he was deprived of a right or privilege secured by the Constitution. Thus, he cannot maintain an action pursuant to § 1983 and Defendants are entitled to summary judgment as to his claims.

### B.    Plaintiff James Wilson

Plaintiff Wilson was not discriminated against because of his race. When asked for specifics as to why he believed he was discriminated against by Defendants in his deposition, Wilson testified as follows:

> Q:    Job discrimination, how were you discriminated against because of your job?
> A:    Once again, you are talking directly to me right?
> Q:    That's right.
> A:    Okay. How was I as an individual? I wasn't because I worked as a tutor at SCI.
> Q:    How about disciplinary, how were you discriminated against based on your race with regard to discipline?
> A:    Once again, I probably had like maybe one or two write-ups while at SCI, so once again I was not.
> Q:    For classification, how were you discriminated against based on your race?
> A:    Once again, me specifically, I wasn't except – wait a minute. Then again, getting me to DCC, I would say I was because there's a guy named Alan Span that was sent to ASDA and they kept his room for him. They sent him back to Merit building, gave him his tutor job back, versus me, they sent me to ASDA, sent me to PI building then classified me to DCC.

(Exhibit "G" – Wilson Dep. 39-40).

Counsel for Defendants has searched DELJIS records and Defendant Deloy has searched prison records, using multiple spellings for the name "Alan Span." Defendants have been unable to find any record of an inmate with this name through DELJIS or SCI records. In his Interrogatory responses, Plaintiff Wilson provided the name of Alan Pendry. Defendants do have a record of an Alan Pendry at SCI. There is

no evidence, however, that Pendry was similarly situated to Wilson.  When questioned about what he knew about this "Alan," Wilson stated that he did not know why Alan was moved from the Merit building and that any information he had was from other people.

> Q:   Do you know why [Alan Span] was initially taken from the Merit building?
> A:   I heard hearsay, but I'm not for sure.
> . . ………………………………
> Q:   Is most of the information that you have about Alan through other people?
> A:   About why he was moved?
> Q:   That's right?
> A:   Yes. . .

(Exhibit "G" – Wilson Dep. 41:12-21).

Further, as discussed in detail under the statement of facts and retaliation claim argument in section IV of this brief, Wilson was not returned to the Merit building because of the results of an institutional investigation.  Alan Pendry was not involved in this investigation.  (Exhibit "E" – Deloy Affidavit).

This assertion by Wilson without any further evidence is simply insufficient to survive summary judgment.  There is no evidence that Wilson was discriminated against and certainly no evidence of intentional or purposeful discrimination by Defendants Taylor or Kearney.  As established by the deposition testimony above, Plaintiff Wilson has not been discriminated against because of his race.

Plaintiff Wilson's claim of racial discrimination pursuant to § 1983 cannot survive summary judgment unless he was personally deprived of a right or privilege secured by the Constitution.  He was not and summary judgment for Defendants should be granted.

### C.    Plaintiff Anthony Morris

Plaintiff Morris cannot establish a basis for his claim that he was racially discriminated against.  When asked for specifics as to why he believed he was discriminated against in Defendants Interrogatory Requests, Plaintiff Morris simply stated see allegations in Complaint and provided no further details.  (D.I. 169).  The Complaint does not provide any details as to how or why Morris was allegedly discriminated against.  (Complaint, *passim*).  When questioned for specifics in his deposition, Morris alleged that the black man is being discriminated against in Merit. (Exhibit "L" – Morris Dep. 50:21-24).  This, however, does not support any claim that he was personally discriminated against.  When questioned for details, Plaintiff Morris was unable to provide any specifics other than to say "everything they do is discrimination" and "they gave the [tier man] job to a white man" that he wanted.  (*Id.* at 51-52).  Plaintiff does not state how this inmate was similarly situated to him and admits he knows very little about him except that his name is "Raz."  (*Id*. at 52).

Plaintiff provides no support for his claims and there is simply no evidence that Plaintiff Morris was discriminated against, let alone any allegation or evidence of intentional or purposeful discrimination by Defendants.  Plaintiff may not rely on conclusory allegations to establish a genuine issue of material fact and summary judgment in favor of defendants is proper.

### D.    Plaintiff Roderick Brown

Plaintiff Brown has not established that he was discriminated against because of his race.  Brown did not respond to Interrogatory requests asking for a detailed explanation of how he was discriminated against.  When questioned in his deposition,

Plaintiff Brown made numerous assertions about being treated unequally at SCI, whether it was because of movements in the prison, what jobs he was given, or his classification. (Exhibit "M" – Brown Dep. 17-24).  He was unable, however, to articulate why any of the decisions he was not happy with were made because of his race.  Nor was he able to establish what similarly situated Caucasian inmate was treated differently than him. When specifically asked what he thought the unequal treatment was based on, he did not say race, but responded: "The point system and the way they do things, period."  (*Id.* at 24:22-24).

Plaintiff Brown has an obligation at this stage of the litigation to come forth with specific evidence to show that the Defendants discriminated against him. Plaintiff's belief that there is unequal treatment in the institution is not sufficient to survive summary judgment and his claims must fail.

### E.    Plaintiff Jose Serpa

Plaintiff Serpa has not come forth with any evidence to support his discrimination claim.  When asked for specifics as to why he believed he was discriminated against in Defendants Interrogatory Requests, Plaintiff Serpa simply stated see allegations in Complaint and provided no further detail.  (D.I. 162).  The Complaint provides no detail as to how or why Serpa was discriminated against.  (Complaint, *passim*).

When questioned in his deposition for specifics as to his claims of discrimination, Plaintiff Serpa made it clear that he is unhappy because he did not get the specific jobs that he wanted within the prison.  He stated he lost his kitchen job because he cut his hand and that he applied for a tutoring job and a gym job after he lost his

kitchen job and believed he was qualified for these jobs. (Exhibit "N" – Serpa Dep. 10-12 and 18-20). He further alleged that a Caucasian inmate got the tutoring job he applied for in 2005. (Exhibit "N" – Serpa Dep. 11-12).

First, Serpa never applied for a job in the gym. A position in the gym would be as a recreational aide. Plaintiff Serpa never applied for nor expressed any interest to the recreational department about working in the gym. (Ehxibit "P" – Carven Affidavit). Second, as to the allegations that a Caucasian inmate got the tutoring job over him, Serpa was unable to provide that inmates name or even a description of the inmate. (Exhibit "N" – Serpa Dep. 12:1-7). It is difficult for Defendants to refute or even investigate such vague accusations without any further specifics. Further, when questioned as to why he believed that inmate got the job he stated as follows:

> Q:  And you said that he was – the guy who got the job was friends with everybody?
> A:  Yes. Like, he know most of the C.O.s  He been down awhile.
> Q:  You think that's why he got the job?
> A:  Yes.

(*Id.* at 13:2-7).

The Complaint alleges *racial* discrimination. Clearly, even Plaintiff himself doesn't believe it was a race issue.

Serpa further alleges that another Caucasian worker was injured while working in the kitchen and was treated differently than him. (Exhibit "N" – Serpa. Dep. 19-20). Serpa, however, was not terminated from his kitchen job because he hurt his hand. He was terminated for failing to obey orders, disrespect, and poor work performance. (Exhibit "O").

Plaintiff Serpa has an obligation at this stage of the litigation to come forth with specific evidence to show he was discriminated against because of his race.  Further, he has not established or even alleged any purposeful or intentional discrimination by Defendants.  Plaintiff's unsupported allegations of racial discrimination are insufficient to survive summary judgment and his claims must fail.

### F.     Plaintiff James Johnson

Plaintiff Johnson signed onto the litigation because he believed it was a class action, but he did not have any of his own claims of racial discrimination.  (Exhibit "I" – Johnson Dep.  11:19-24).  Plaintiff Johnson then alleges in his deposition testimony that he was discriminated against because he was denied an institutional modification pursuant to 11 *Del. C.* § 4217 in October of 2006.  (*Id.* at 8-10, 11:13-18).  First, this time period is well after the original filing of the Complaint.  Second, § 4217 is a statutory process for early release for exceptional rehabilitation based upon an application filed by the Department of Correction.  Such applications are extremely rare because very few inmates are considered exceptionally rehabilitated.  (Exhibit "D" – Ditto Affidavit).  Since June of 2003, only four inmates from the Merit Building were submitted pursuant to § 4217.  Two were Caucasian and two were African-American.  Only one was accepted for modification, and he was an African-American.  (*Id.*).

Plaintiff Johnson has a violent record and when released on parole, he violated parole for a violent offense.  He has also engaged in very little treatment and programming over the years.  As such, he simply does not meet the strict model for exceptional rehabilitation required to even be considered under § 4217.  (Exhibit "D" –

Ditto Affidavit). Any claim that he was denied for consideration because of his race is incredulous and unsubstantiated.

Plaintiff Johnson has no basis for an action pursuant to § 1983 as he was not deprived of any right or privilege because of his race and summary judgment in favor of Defendants must be granted.

### G.    Merit Building.

The Complaint makes general allegations that the Merit building is racially segregated. To survive summary judgment, Defendants contend that plaintiffs must come forth with individual claims of racial discrimination and may not continue to rely on the broad allegations in the Complaint.

Regardless, Plaintiffs have simply no basis for their claim that the Merit building is segregated. Plaintiffs Wilson and Brown, who are both African-American, were at one time housed on the East Side which the Complaint claims is the "white side." (Exhibit "M" – Brown Dep. 29:1-3, Exhibit "G" – Wilson Dep. 41:8). Further, the privileges are the same on each side of the building. (Exhibit "E" – Deloy Affidavit). There is no difference between either side, except that if you work a particular job you may be housed on a side with inmates who also work that job. (Exhibit "M" – Brown Dep. 28:11-25)(Exhibit "E" – Deloy Affidavit).

Merit building vacancies are filled as they become open. If a bunk becomes available, the next inmate candidate eligible for placement takes that bunk regardless of whether it is on the east side or west side of the building. While there is some effort to keep inmates with similar jobs in the same general location, this is done for logistical and security reasons and has nothing to do with race. (Exhibit "E" – Deloy

23

Affidavit).  For example, the food cart workers may work the same hours and, thus, would be generally housed near each other so that they can be released at the same time.

Even viewing the facts in a light most favorable to Plaintiffs and assuming *arugendo* that the Plaintiffs' allegations are correct and the west side of the merit building houses predominately black inmates and the east side houses predominately white inmates, Plaintiffs do not allege intentional or purposeful discrimination.  At best, Plaintiffs are alleging that the classification system has a disproportionate impact.  Disproportionate impact by itself, however, is insufficient to establish a claim of racial discrimination.  There must be some evidence of intentional or purposeful discrimination.

In *Dickens v. Taylor*, 464 F.Supp.2d 341 (D. Del. 2006), the plaintiff alleged racial discrimination because the majority of the inmates in the secured housing unit were black while there was a large percentage of white inmates in the minimum security building.  The Court found no allegation of discriminatory intent and held that "an official act . . . is not unconstitutional solely because it has a racially disproportionate impact." *Id*. at 355.

There is even less support for the allegations of discrimination in this case.  The Merit Building is an honor building for *any* inmate housed there, regardless of whether that inmate is housed on the east side or the west side.  The difference between the sides is merely a characterization of the housing with respect to where it is located within the building; the privileges are the same on both sides.  (Exhibit "E" – Deloy Affidavit).  As opposed to *Dickens*, where the Plaintiff was alleging racially disproportionate housing with regard to security levels.

24

Plaintiffs have not met their burden to prevail under an equal protection claim and summary judgment in favor of defendants is appropriate.

### H.     Absence of evidence of discriminatory purpose or intent.

To prevail on an equal protection claim, Plaintiffs must prove not only discriminatory impact, but also discriminatory purpose or intent.  "Discriminatory purpose . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decision maker . . . selected . . . a particular course of action at least in part because of, and not merely in spite of, its adverse effects upon an identifiable group." *Personnel Adm'r v. Feeney*, 442 U.S. 256, 279 (1979).

In *Brown v. Leftridge*, 2000 WL 1780234 (E.D. Pa.), the plaintiff, an African-American inmate alleged that correctional officials discriminated against inmates on the basis of race in assigning cells.  The Court examined the evidence and found that it suggested that African-American and Caucasian inmates rarely shared cells, but that plaintiff "has not shown that this situation is the result of purposeful discrimination."  *Id*. The Court found that the plaintiff's reliance on his own observation of the lack of integration and his own experience in sharing cells only with African American inmates was insufficient to survive summary judgment as there was no evidence of discriminatory purpose.

Unlike *Brown*, Plaintiffs here have not even established any discriminatory impact as to any of their allegations.  Even if they had, there is not any evidence, or even allegation of discriminatory purpose or intent of Defendants to discriminate against any of the plaintiffs.

25

To avoid summary judgment, Plaintiffs must identify affirmative evidence from which a jury could find that Defendants were motivated by intent to racially discriminate. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998). Plaintiffs' have not come forth with any affirmative evidence to show discriminatory purpose and their claims of racial discrimination cannot survive summary judgment.

**III.     Defendants Taylor and Kearney Cannot Be Held Liable Under 42 *U.S.C.* § 1983 Absent any Personal Involvement and Based Solely on Their Supervisory Responsibilities.**

To support a claim for a civil rights violation a plaintiff must show that the defendant had *personal involvement* in the alleged wrongs. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (emphasis added). Personal involvement can be shown through assertions of personal direction, or actual knowledge and acquiescence. *Rode*, 845 F.2d at 1207. A plaintiff must prove that the accused official "played an affirmative role in the deprivation of the plaintiffs' rights, i.e., there must be a causal link between the actions of the responsible officials named and the challenged misconduct." *Pennsylvania v. Porter*, 659 F.2d 306, 336 (3d Cir. 1981).

"Supervisor liability may attach only if the supervisor implemented deficient policies and was deliberately indifferent to the resulting risk or the supervisor's actions or inactions were the moving force behind the harm suffered by the Plaintiff." *Sample v. Diecks*, 85 F.2d 1099, 1117-18 (3d. Cir.1985)). In addition, grievances or letters are not enough to impute knowledge to a defendant. *Brookins v. Williams*, 402 F.Supp.2d 508, 512 (D. Del. 2005) (quoting *Rode*, 845 F.2d at 1208)); *Spencer v. Kelchner*, 2007 WL 88084, *at 7. (M.D. Pa)("Allowing only a letter sent to an official to be sufficient to impose supervisory liability would permit an inmate to subject defendants

26

to potential liability in any case in which the prisoner merely transmitted correspondence to the official.").  (Exhibit "Q").

Stan Taylor was the Commissioner of the Department of Corrections during the relevant time periods in Plaintiffs' Complaint.  Rick Kearney was the Warden of SCI during the relevant time periods in Plaintiffs' Complaint.  Plaintiffs' Second Amended Complaint alleges that Defendants Taylor and Kearney "maintain policies that denies [sic] black inmates equal protection, in due process, classification and job opportunity."  (D.I. 27 at 5).

Plaintiffs have been unable to establish what these alleged "policies" are.[2] Plaintiff Wilson stated that Defendant Taylor allowed classification, job opportunity, and disciplinary policies to be put in place, but he was unable to articulate how these policies were discriminatory.  (Exhibit "G" – Wilson Dep. 39-40).  Defendants assert that that SCI does not racially discriminate with regard to job assignments, housing location, classification, discipline, or otherwise.  (Exhibits "D", "E", and "H – Ditto, Deloy, and Kearney Affidavits).  Defendants do not maintain policies that have a racially discriminatory effect.  (*Id*.)  It is difficult for Defendants to provide rebuttal evidence on the alleged "policies" of racial discrimination, when Defendants are unclear as to what policies or prison regulations Plaintiffs are referring to.  To simply state there is a policy that is discriminatory is insufficient at this stage of the litigation.

Further, when questioned as to why Defendants Taylor and Kearney are named in the Complaint, Plaintiffs repeatedly stated that either they didn't know or it was

---

[2] (Exhibit "L" – Morris Dep. 60:24, 61:1-4), (Exhibit "I"—Johnson Dep.18:3-6), (Exhibit "M" – Brown Dep. 31), (Exhibit "N" – Serpa Dep. 24:15-24, 25:1-2).

because of their position of overseeing either the wardens or the prisons.[3]   Plaintiff

Wilson, the drafter of the Complaint, testified as follows:

> Q:    Okay.  Do you know why you have named [Commissioner Taylor]
>       in this particular lawsuit?
> A:    Because he's the commissioner. I thought it was the formality,
>       name the commissioner because he oversees the warden, et cetera.
>       So that's why I named him.

(Exhibit "G" – Wilson Dep. 36:13-17)

> Q:    Why did you name [Warden Kearney] in this suit?
> A:    Because he's the warden of SCI at that time and his job I believe
>       was to oversee the DOC rules and regulations and look at them,
>       make sure they are balanced.

(*Id*. at 48:6-10).

Plaintiffs have not established any causal link between the actions of

Defendants and the alleged racial discrimination.  Further, nothing in the Complaint or

produced through discovery, provides any support that Defendants were the "moving

force" behind any of the alleged violations.  Plaintiffs must provide evidence of personal

involvement by Defendants Taylor and Kearney for their claims to proceed past summary

judgment.  They have not and their claims must fail.

## IV.    Defendant Deloy Did Not Retaliate Against Plaintiff Wilson.

To prevail on a retaliation claim, a Plaintiff must establish that "(1) the

conduct which led to the alleged retaliation was constitutionally protected; (2) he suffered

some adverse action at the hands of prison officials, one sufficient to deter a person of

ordinary firmness from exercising his constitutional rights, and (3) a causal link between

the conduct and the adverse action."  (D.I. 125, at 16)(citing *Rauser v. Horn*, 241 F.3d

330 (3d Cir. 2001); *Allah v. Seiverling*, 229 F.3d 220, 225 (3d. Cir. 2000).

---

[3] (Exhibit "N" – Serpa Dep. 25:13),  (Exhibit "I" – Johnson Dep. 17:3), (Exhibit "M" – Brown Dep. 25:10-14)

Plaintiff Wilson alleges in his Motion to Amend the Complaint (D.I. 85) that Defendant Deloy retaliated against him for filing grievances by transferring him to more restrictive housing.  Plaintiff Wilson, however, cannot meet the first and third prong of the *Rauser* test and his argument must fail.

### A.  Wilson cannot establish that the conduct that led to the alleged retaliation was constitutionally protected.

Plaintiff was moved out of the Merit Building in March of 2006 because he was under investigation.  (Exhibits "D", "E", and "H" – Ditto, Deloy, and Kearney Affidavits).  Plaintiff Wilson alleges in his Complaint that he was moved to housing with fewer privileges and that he feels he was moved in retaliation for writing grievances. (D.I. 85, at 2).  However, in his deposition, Wilson admitted that he knew that he was moved because he was under investigation and he was also aware that inmates are typically moved out of the Merit Building when they are under investigation.  (Exhibit "G" – Wilson Dep. at 44-45).  He also understood why he was under investigation.  (*Id.* at 52-53).  When directly asked why he felt he was moved, Plaintiff replied "I was moved because of the investigation."  (*Id.* at 49:22-24, 50).  There is no constitutional protected interest to be free from investigation while incarcerated and the argument must fail.

The Court construed Wilson's amendment to the Complaint to allege that the constitutionally protected right was access to the courts based on his assertion that he was moved for writing grievances.  (D.I. 125, at 16).  Defendants respectfully submit that, given the above-referenced deposition testimony, this is not what Wilson is alleging. Regardless, even assuming *arguendo* that Wilson is alleging a denial of his right of access to the courts, the claim must still fail because Wilson cannot meet the third prong of the *Rauser* test.

**B.** **There is no causal link between Wilson's transfer and his filing of this litigation.**

As previously discussed, there is simply no dispute that Wilson was moved out of the Merit building because of a pending investigation. Upon conclusion of the investigation, the Warden at the time, Rick Kearney, determined that Wilson could not return to the Merit building. (Exhibit "H" – Kearney Affidavit).

Plaintiff Wilson was presented with two options for housing. He was told he could be placed in the Greentree program at DCC or he could take a job in the kitchen. (Exhibit "D" – Ditto Affidavit). Wilson refused to make a choice. (Exhibit "G" – Wilson Dep. 53:12-24, 54:1-4). Thus, the choice was made for him and he was placed in the Greentree program at DCC. Wilson had previously requested placement in the Greentree program at SCI, but federal funding requirements did not qualify him for the program at SCI so he was moved to DCC. (Exhibit "D" – Ditto Affidavit, Exhibit "G" – Wilson Dep. 27:8-21).

Wilson was certainly unhappy with this move and would have preferred to be in Greentree at SCI. He testified he knew the people at SCI better and could probably work better with them and he "wasn't interested in getting acquainted" with the people at DCC. (Exhibit "G" – Wilson Dep. 46). Wilson's unhappiness with a particular classification certainly doesn't amount to a constitutional violation by Defendant Deloy.

The temporal proximity between the investigation and the transfer as opposed to the filing of grievances and transfer also refutes and claim of a retaliatory transfer. To establish a prima facie case of retaliation, the alleged protected conduct and the adverse action by Defendants must be "very close." *Clark Cty. School Dist. v. Breeden*, 532 U.S. 268, 273 (2001). As previously discussed, Wilson filed several

grievances against Cpl. Stolzenbach in September and November of 2005 and two in early February of 2006 – only the one in November of 2005 mentioned superiors of Cpl. Stolzenbach.  Plaintiff was not transferred until March 29, 2006 when the investigation began.

Finally, the decision that Wilson could not return to the Merit building was made by Warden Rick Kearney, and not Deputy Warden Mike Deloy.  (Exhibit "H" – Kearney Affidavit).  Upon conclusion of the investigation and review of the investigator's findings, Warden Kearney determined that Wilson could not return to the Merit Building.  Thus, there is no causal connection between Defendant Deloy's actions and Wilson's removal from the Merit building.

Wilson was transferred for legitimate security reasons within the institution and Wilson was at all times entirely aware of the reason for his transfer. "Prison officials have broad discretion to transfer an inmate from one institution to another, even where the degree of confinement in one prison may differ from another. *Meachum v. Fano*, 427 U.S. 215, 224-225 (1976).  Prison officials at SCI, and specifically Defendant Deloy, did not retaliate against Wilson.  Indeed, Wilson was even given a choice of new locations which officials were not required to do as inmates do not have any right to a particular classification.  When he refused to choose, efforts were made to place Wilson in a program that he had previously requested to participate in.

There is simply no factual or causal connection between Wilson's transfer and the filing of grievances.  There is also no causal connection between Wilson's transfer and Defendant Deloy.  Summary Judgment should be granted in favor of Defendant Deloy.

**V.     Plaintiffs Have Not Suffered Any Physical Injury and Are Precluded From Recovering Compensatory Damages.**

Section 1983, as a tort statute, requires an injury to be actionable.   Under § 1983, damages are available for actions found to be in violation of constitutional rights and to have caused compensable injury.  *Allah v. Al-Hafeex*, 226 F.3d 247, 250 (3d Cir. 2000).   A limitation on prisoner recovery is established in 42 *U.S.C.* 1997e(e).   The statute provides as follows:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

Thus to have an actionable claim for compensatory damages on the basis of mental or emotional injury, a prisoner must first establish some physical injury.   Further, where a plaintiff's claims have no basis in law or fact, he should be barred from the recovery of damages entirely.  *Waples v. Kearney*, 2005 WL 724175, at *4 (D.Del. 2005) (citing *Ostrander v. Horn*, 145 F.Supp.2d 614, 619 (M.D. Pa. 2001)).  (Exhibit "Q").

Plaintiffs have not alleged or established that they suffered any physical injury at all, other than to say that they have suffered "mental anguish."   When Defendants asked Plaintiffs in Interrogatories to identify the precise injury or harm suffered, Plaintiffs Morris and Johnson alleged "mental anguish."  (D.I. 167, at 7 and 169, at 7).   Plaintiff Serpa stated no "physical injury was done to [him]", but claimed mental stress (D.I. 162, at 8) and Plaintiff Wilson alleged "moved to D.C.C., job taking, loss of good time."  (D.I. 164, at 8)   Plaintiffs Brown and Green did not respond to discovery requests.   In depositions, Plaintiff Brown stated "I am affected mentally" (Exhibit "M" – Brown Dep. 35:22).   Plaintiff Green alleged he was not discriminated against at all by Defendants, thus there can be no injury.

Plaintiffs' Complaint does not specify what form of damages they are seeking.  To the extent, however, that they seek compensatory damages, their damages claim should be dismissed for failure to allege or establish any physical injury.  Further, because Plaintiffs' claims do not have an arguable basis in law or fact, Plaintiffs should be barred from recovering damages entirely, compensatory or otherwise.

## VI.  Defendants Are Immune From Liability in Their Individual Capacities Pursuant to the Doctrine of Qualified Immunity.

Plaintiffs cannot maintain an action against the Defendants in their individual capacities pursuant to the doctrine of qualified immunity.  Government officials performing discretionary functions are immune from liability for damages, provided that their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  A right is clearly established when, "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  Qualified immunity is designed to protect officials from the personal cost of litigation and the attendant inhibiting effect litigation has on the proper discharge of their official responsibilities.  *Lee v. Mihalich*, 847 F.2d 66, 69 (3d Cir. 1988) (*citing Anderson*, 483 U.S. 635.

Furthermore, Defendants are entitled to qualified immunity where they acted in good faith, without gross or wanton negligence, in the performance of their discretionary duties.  *Vick v. Haller*, 512 A.2d 249 (1986) (*aff'd in part and rev'd in part on procedural grounds*).

The damages portion of the plaintiff's complaint must be dismissed under the doctrine of qualified immunity. As the Third Circuit Court of Appeals held in *Ryan v. Burlington County*, 889 F.2d 1286, 1292 (3d Cir. 1989) "[t]he defense of qualified immunity is a recognition of the fact that subjecting public officials to personal liability for their discretionary actions results in the distraction of those officials from their public duties, inhibits their discretionary actions and, quite possibly, deters qualified people from accepting public service." *Id.*

Defendants assert that given the above arguments, the record in this case, and the absence of any evidence of racially discrimination or racially discriminatory policies, Defendants did not violate Plaintiffs' constitutional rights. Even if it can be found that one or more of the Plaintiffs were discriminated against because of race, Defendants are immune from personal liability because Plaintiffs have not established any connection between Defendants conduct and their allegations. Thus, Defendants would not know that they were required to take more personal responsibility than that which they assumed. Accordingly, as Plaintiff fail to defeat the affirmative defense of qualified immunity, summary judgment is appropriate.

Given that the Defendants are immune from liability in their individual capacities, Plaintiff cannot maintain this action and the Motion for Summary Judgment should be granted.

## **CONCLUSION**

Plaintiffs' claims against Stan Taylor, Rick Kearney, and Mike Deloy must be dismissed because Plaintiff can not establish any actionable basis under § 1983 for liability against them.  Judgment in favor of all Defendants should be granted as a matter of law because Plaintiffs have not provided any evidence to establish a violation of their federal right to equal protection, they have not suffered any injury, and they have not exhausted their administrative remedies as required by the PLRA.  Plaintiffs cannot defeat the Defendants affirmative defense of qualified immunity and judgment in their favor should be granted.

## CERTIFICATE OF SERVICE

I hereby certify that on July 20, 2007, I electronically filed *Defendants' Opening Brief In Support of The Motion for Summary Judgment* with the Clerk of Court using CM/ECF. I hereby certify that on July 20, 2007, I have mailed by United States Postal Service, the document to the non-registered parties listed below:

James Johnson, Inmate
SBI #  155123
Sussex Correctional Institution
Post Office Box 500
Georgetown, DE 19947

Roderick Brown, Inmate
SBI #  315954
Sussex Correctional Institution
Post Office Box 500
Georgetown, DE 19947

Jerome Green, Inmate
SBI #  147772
Sussex Correctional Institution
Post Office Box 500
Georgetown, DE 19947

Jose Serpa, Inmate
SBI #  350322
Sussex Correctional Institution
Post Office Box 500
Georgetown, DE 19947

Anthony Morris, Inmate
SBI #  300363
Sussex Correctional Institution
Post Office Box 500
Georgetown, DE 19947

James A. Wilson
SBI #163663
DCC
1181 Paddock Road
Smyrna, DE 19977

/s/ Stacey Xarhoulakos
Stacey Xarhoulakos, (I.D. 4667)
Deputy Attorney General
Carvel State Office Building
820 North French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400
stacey.xarhoulakos@state.de.us
*Attorney for Defendants*