# EXHIBIT K

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

JAMES A. WILSON, et al.,    )
                            )
        Plaintiffs,         )   C.A. No. 05-399-JJF
                            )
v.                          )
                            )
STANLEY TAYLOR, et al.,     )
                            )
        Defendant.          )

  Deposition of JEROME L. GREEN taken pursuant to notice before Renee A. Meyers, Certified Realtime Reporter and Notary Public, in the Sussex Correctional Center, Georgetown, Delaware, on Thursday, June 28, 2007, beginning at approximately 9:00 a.m., there being present:

APPEARANCES:

    DEPARTMENT OF JUSTICE
    STACEY XARHOULAKOS, ESQ.
       820 North French Street, 6th Floor
       Wilmington, Delaware  19801
       for Defendants.

CORBETT & WILCOX
Registered Professional Reporters
230 North Market Street    Wilmington, DE 19899
(302) 571-0510
www.corbettreporting.com
Corbett & Wilcox is not affiliated
with Wilcox & Fetzer, Court Reporters

Jerome L. Green

2 (Pages 2 to 5)

Page 2

1  JEROME L. GREEN,
2  the witness herein, having first been
3  duly sworn on oath, was examined and
4  testified as follows:
5  BY MS. XARHOULAKOS:
6  Q. Mr. Green, my name is Stacey Xarhoulakos. I am
7  an attorney for the defendants in the case of Wilson v.
8  Taylor. The first thing I am going to tell you, just
9  because that was already a problem, everything that we
10 are saying now is being transcribed by the court
11 reporter, so, to that end, you need to speak yes or no
12 only so she can take it down because if you just say
13 mm-hmm, then that's not going to be able to be
14 transcribed.
15    A. All right.
16    Q. Are you familiar with the case that we are here
17 for?
18    A. I got a good idea.
19    Q. And what is your idea of the case?
20    A. The -- you are talking about the incident that
21 happened in the Merit building where they sprayed the
22 guy with mace?
23    Q. What incident is that?
24    A. It was a dude -- what was his name -- I think his

Page 3

1  name was Pedro or something where him and an officer got
2  into a confrontation.
3     Q. Pedro, P-e-d-r-o?
4     A. I guess that's his name.
5     Q. Do you know how you became involved with this
6  case?
7     A. I guess I was on the tier. I am on the same pod
8  they on. I guess when they go to work, him and the
9  officer got into a confrontation and he told him --
10 asked him for his I.D. and words exchanged and they
11 maced him.
12    Q. Did you review the notice that I sent scheduling
13 this deposition?
14    A. I read it.
15    Q. You read it. And did you see the case is called
16 Wilson v. Taylor; did you see that?
17    A. I don't know. I am involved in like three of
18 them. I don't -- you know what I mean.
19    Q. That's what I am trying to figure out, the extent
20 of your involvement in this case.
21    A. Okay.
22    Q. It was initiated by James Wilson.
23    A. Mm-hmm.
24    Q. Do you know James Wilson?

Page 4

1     A. Mm-hmm. Yes.
2     Q. How do you know him?
3     A. I know him from doing time with him, from being
4  in the same building with him.
5     Q. And do you recall signing onto litigation that he
6  was working on?
7     A. Mm-hmm.
8     Q. Speak yes or no.
9     A. Yes.
10    Q. And do you recall what that case was about?
11    A. It was about some racial issues, about a lot of
12 stuff that was going on in the Merit building that
13 whites were doing that the blacks couldn't get away
14 with.
15    Q. And did you read the complaint when you signed
16 onto it?
17    A. Well, yes, I read it. I read it.
18    Q. And do you recall some of the allegations in the
19 complaint?
20    A. Well, it was a lot of allegations. They had
21 stuff dealing with retaliation, harassment. What else?
22 You know, a lot of stuff on there.
23    Q. Do you know what a class action is?
24    A. Mm-hmm. That's -- that's as a whole.

Page 5

1     Q. That's what?
2     A. As a whole, everybody, like a -- a group of guys
3  filing a lawsuit.
4     Q. Do you understand that when there is a class
5  action, there has to be one person representing the
6  group?
7     A. Yes.
8     Q. And do you know that, in this case, that
9  Mr. Wilson made a request for this case to be a class
10 action?
11    A. Yes.
12    Q. And do you know that the Court denied that
13 request?
14    A. No.
15    Q. Would you believe me if I told you it was denied
16 or would you like to see the order that denied that.
17    A. I believe you.
18    Q. Do you understand that because it's not a class
19 action, that, essentially, that every plaintiff has his
20 own case?
21    A. Okay.
22    Q. Does that make sense to you?
23    A. Makes sense.
24    Q. So this is not case where you are proceeding as a

Jerome L. Green

3 (Pages 6 to 9)

Page 6

1  group; each person in the case has his own action.
2    A. Okay.
3    Q. Have you ever been deposed before?
4    A. Yeah.
5    Q. You have?
6    A. (Witness nods.)
7    Q. In what case?
8    A. I'd say -- I won't say me personally, what's up
9  with my charge. Do you know what I am saying?
10   Q. This is not a criminal matter, so this --
11   A. Yeah.
12   Q. In relation -- in any case that wasn't criminal,
13 have you had your deposition taken?
14   A. Uh-uh.
15   Q. Is that a no?
16   A. No.
17   Q. Do you understand what the process is or would
18 you like me to explain it to you?
19   A. Explain it to me.
20   Q. Everything that you say is sworn testimony. You
21 were sworn at the beginning of the deposition, and it's
22 being transcribed by the court reporter. And that's
23 because it can be used in trial or it can be used for
24 the parties to file a motion to either dismiss the case

Page 7

1  or to narrow the claims in the case.
2      There is going to be a record that's created, and
3  because I scheduled the deposition, this is something
4  that my office is purchasing. If you wanted a copy of
5  it, you could purchase a copy yourself.
6      Do you understand that?
7    A. Mm-hmm.
8    Q. Say yes or no.
9    A. Yes.
10   Q. Are you taking any medications now?
11   A. No.
12   Q. Are you taking any at all?
13   A. No.
14   Q. Do you know who the defendants are in this
15 lawsuit?
16   A. Most of them -- yes. Most of them, I work with
17 them.
18   Q. The defendants, do you know who the defendants
19 are?
20   A. Most of them, I work with most of them.
21   Q. Who are the defendants?
22   A. You are talking about Eldridge Potter (sic), a
23 guy named Potter. Joseph -- what was his name -- I
24 don't know his last name. Another guy named James

Page 8

1  Johnson.
2    Q. I am going to stop you right there, Mr. Green.
3      Do you understand the difference between a
4  plaintiff and a defendant?
5    A. The plaintiff is who you filed the complaint
6  against. We the plaintiff, I guess.
7    Q. So the people that you were just listing, those
8  the plaintiffs.
9    A. Okay.
10   Q. My question for you is: Do you know who the
11 defendants are?
12   A. You are talking about Stan Taylor.
13   Q. The people who have been sued.
14   A. Stolzenbach, Carmine, Hollis. A lot of them go
15 -- I try and stay away from them in that building?
16   Q. Have you been reading the Court documents you
17 receive in this case?
18   A. Most of them.
19   Q. Are you aware that the Court has narrowed the
20 case and most of the defendants are no longer in the
21 case?
22   A. Mm-hmm. I seen about nine or ten guys left,
23 something like that.
24   Q. Of the people who were sued, do you understand

Page 9

1  that a lot of them are no longer in the case?
2    A. Mm-hmm.
3    Q. Is that a yes?
4    A. Yes.
5    Q. Do you know who is left in the case?
6    A. Uh-uh. No.
7    Q. When Mr. Wilson approached you about this
8  lawsuit, did he ask you if you have had any problems
9  with discrimination in the prison?
10   A. I had a few of them, you know what I am saying?
11 He asked me.
12   Q. He did. Okay.
13     And what did you tell him?
14   A. Him said -- before he even, I got into an
15 incident with -- I ain't go on my day off and they had
16 me moved to another building.
17   Q. Who had you moved?
18   A. The officer in the building.
19   Q. The who?
20   A. Hollis, Carmine, he was in charge of the building
21 that day, and what's her name, Miss Melvin, Miss Melvin.
22   Q. Why were you moved?
23   A. Because I didn't go in on my day off.
24   Q. And when was this?

Jerome L. Green

4 (Pages 10 to 13)

Page 10

1   A. This was about like nine, ten months ago.
2   Q. Nine or ten months ago?
3   A. Mm-hmm.
4   Q. Do you recall a date?
5   A. Not really. I got it written down over there. I
6   am just getting back over there probably about six,
7   seven months ago.
8   Q. What building were you moved out of?
9   A. Out of the Merit to Key building.
10  Q. Was that before or after this lawsuit was filed?
11  A. After.
12  Q. Before the lawsuit was filed, were there any
13  incidents of discrimination against you?
14  A. I am saying it all depends what you want to call,
15  you know, discrimination, you know what I am saying? I
16  just call it being in jail, you know what I mean? Stuff
17  be said and you either go with it or make a big issue
18  out of it. It ain't nothing.
19  Q. Well, it's important for the case, if it's going
20  to move forward, that we are all clear on what the
21  allegations of discrimination are, so that's why I need
22  to ask you what specifically happened to you that you
23  believe was a result of discrimination.
24  A. That's about it right there, with me, as far as I

Page 11

1   am concerned.
2   Q. The incident where you were moved?
3   A. Mm-hmm.
4   Q. But you said that was after the lawsuit was
5   filed?
6   A. (Witness nods.)
7   Q. Was that a yes?
8   A. Yes.
9   Q. Mr. Green, the remaining -- the only remaining
10  defendants in this case, and I have the order if you
11  want me to show you, but the only remaining defendants
12  are Stan Taylor and Warden Rick Kearney.
13  A. Mm-hmm.
14  Q. Say yes or no.
15  A. Yes.
16  Q. And Mr. Wilson, himself, has a retaliation claim
17  against Mike Deloy. So, with those remaining
18  defendants, are you making any claims against Stan
19  Taylor or Warden Rick Kearney? You personally?
20  A. No.
21  Q. Do you still wish to pursue the litigation?
22  A. You know what I am saying --
23  Q. I mean, at this point, those are the remaining
24  defendants. So my question to you is: Do you have --

Page 12

1   if you don't have any claims against them --
2   A. I ain't got no problem with them. I am saying,
3   you know, it's just part of jail as far as I am
4   concerned, you know what I mean?
5   Q. Would you like to dismiss the litigation against
6   them?
7   A. I am saying yeah, you can dismiss it.
8   Q. Okay.
9     Mr. Green, I have a dismissal here with your name
10  and their names. If you would like to read it and go
11  ahead and sign it, you will be out of this case.
12  A. I don't think I want to sign nothing, though.
13  Q. Okay. Do you understand what I gave you?
14  A. Mm-hmm. I ain't going to sign nothing.
15  Q. So, before, when you stated you wanted to dismiss
16  the case, are you changing your mind now?
17  A. I just ain't going to sign nothing, you know what
18  I am saying? What's going to happen is going to happen
19  anyway. They are going to retaliate, I am still here in
20  the jail, so it don't really matter if they go forward
21  or dismiss it or whatever.
22  Q. Well, I just want to -- I mean, I am not trying
23  to confuse you or trick you. I just want to let you
24  know where this case stands. There is you and about

Page 13

1   eight other plaintiffs. One of them has already
2   dismissed the case and I am going to depose the rest of
3   them today. I have spoken to Mr. Wilson at Delaware
4   Correctional Center, and the case has been narrowed,
5   there are two defendants, Stan Taylor and Warden Rick
6   Kearney; okay?
7     At this point, after this deposition and the rest
8   that I have today, we are going to file a motion and you
9   have a right to respond to that motion. What I was
10  asking you today was whether or not you wanted to pursue
11  the case anymore, and that's what I gave you to sign,
12  was the dismissal. You said you don't want to pursue
13  the case but you are not comfortable signing a
14  dismissal; is that right?
15  A. You told me the case was already dismissed.
16  Q. Well, let me clarify for you: The case is still
17  ongoing against two of the defendants; do you understand
18  that?
19  A. Yes.
20  Q. Do you understand which two defendants are left?
21  A. Stan Taylor and Kearney.
22  Q. And do you understand what I told you about you
23  have to have intentional allegations of discrimination
24  against them?

Page 14

1  A. Mm-hmm.
2  Q. Do you understand that?
3  A. Yes.
10 A. Mm-hmm.
11 Q. Did you receive any discovery that I sent to you?
12 There were questions called Interrogatories and Requests
13 for Production; do you recall receiving them?
14 A. I probably did. I don't recall because I am
15 involved in two or three more of them.
16 Q. You did not respond to what I sent; correct?
17 A. Uh-uh.
18 Q. Why is that?
19 A. Because, you know, I don't think, you know what I
20 mean, it has anything to do with the case as far as, you
21 know, what's going on, you know. I am saying, you know,
22 I am saying that's my opinion. That's why I didn't
23 respond to it.
24 Q. Do you have anything to supplement at this time

Page 15

1  to those responses that you did not send?
2  A. Uh-uh.
3  Q. Is that a no?
4  A. I don't have anything.
5  Q. Mr. Green, what are you currently incarcerated
6  for?
7  A. Drug charge and a gun.
8  Q. When were those charges?
9  A. I don't recall. I have been in jail like 13
10 years, you know what I mean?
11 Q. Thirteen years, so was it 1994?
12 A. Something like that. About that.
13 Q. And what is your expected release date?
14 A. I got life.
15 Q. You got life. Okay. And these were multiple
16 felony charges; is that right?
17 A. Mm-hmm. Yes.
18 Q. Mr. Green, you can, if you want, add something to
19 the transcript. It's up to you if there is anything
20 that you want to put on the record.
21 A. Thank you.
22    (The deposition was concluded at 9:30 a.m.)
23    - - - - -
24

Page 16

1              INDEX TO TESTIMONY
2
   JEROME L. GREEN                    PAGE
9
   (There were no exhibits marked for identification.)

Page 17

1              C E R T I F I C A T E
2  STATE OF DELAWARE:
       :
3  NEW CASTLE COUNTY:
4     I, Renee A. Meyers, a Registered Professional
5  Reporter and Notary Public, within and for the County
6  and State aforesaid, do hereby certify that the
7  foregoing deposition of JEROME L. GREEN, was taken
8  before me, pursuant to notice, at the time and place
9  indicated; that said deponent was by me duly sworn to
10 tell the truth, the whole truth, and nothing but the
11 truth; that the testimony of said deponent was correctly
12 recorded in machine shorthand by me and thereafter
13 transcribed under my supervision with computer-aided
14 transcription; that the deposition is a true record of
15 the testimony given by the witness; and that I am
16 neither of counsel nor kin to any party in said action,
17 nor interested in the outcome thereof.
18    WITNESS my hand this 11th day of July A.D. 2007.
19
20    _____
   RENEE A. MEYERS
21    REGISTERED PROFESSIONAL REPORTER
   CERTIFICATION NO. 106-RPR
22 (Expires January 31, 2008)