# EXHIBIT Q
# (con't 2)

Westlaw.

Not Reported in A.2d                                                                          Page 1

Not Reported in A.2d, 1995 WL 214348 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

**H**
Abdul-Akbar v. Department of Corrections
Del.Ch.,1995.
Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.
Court of Chancery of Delaware, Sussex County.
Debro Siddiq ABDUL-AKBAR, Plaintiff,
v.
DEPARTMENT OF CORRECTIONS, Robert J. Watson, Stan Taylor, Rick Kearney, George Turitt, Howard Fisher, Michael Deloy, Rudy Druming, Lt. Tyndall, and any and all other persons who may acted in concert with them unknown at this time, Defendants.
Submitted: Jan. 28, 1995.
Decided: March 30, 1995.

Debro Siddiq Abdul-Akbar, pro se.

MEMORANDUM OPINION
ALLEN, Chancellor.
*1 Debro Siddiq Abdul-Akbar, an inmate of the Delaware Correctional Center, has sent to the clerk of this court a lengthy complaint alleging that his constitutional rights have been violated by defendant Department of Corrections, and others.[FN1] Specifically Mr. Abdul-Akbar alleges ten claims. For the reasons that follow, I conclude that even assuming the truth of the allegations, that they fail to state a claim upon which relief can be granted.

Generally a court may dismiss a prisoner's complaint brought *in forma pauperis,* as is this one, if its factual allegations and legal conclusions lack an arguable basis in either law or fact. *Neitzke v. Williams,* 490 U.S. 319, 325 (1989); *Denton v. Hernandez,* 112 S.Ct. 1728, 1733 (1992) (*quoting Neitzke,* 490 U.S. at 327) (Under 28 U.S.C. § 1915(d) [federal *in forma pauperis* statute] judges have "the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.")

1. Claim One.

Mr. Abdul-Akbar alleges that the prison where he is incarcerated ("S.C.I.") does not enforce a code of disciplinary procedures employed at all other state prisons in Delaware. As an example, Mr. Abdul-Akbar contends that S.C.I. places its prisoners in isolation for a maximum of 90 days for certain major prison rule infractions while other prisons have a limit of 15 days in isolation for similar infractions. He claims that this unequal punishment for similar infractions between the state's prisons violates his and other similarly situated prisoners' equal protection rights.

These allegations fail to state a cognizable claim; there is no equal protection requirement that each institution be governed by identical rules. *Turner v. Safley,* 482 U.S. 78, 95 n. * (1987). The Constitution "does not mandate a 'lowest common denominator' security standard, whereby a practice permitted at one penal institution must be permitted at all institutions." *Id.* (*quoting Bell v. Wolfish,* 441 U.S. 520, 554 (1979)). Disciplinary treatment may vary in its degree of severity at different prisons. *See, e.g., Meachum v. Fano,* 427 U.S. 215, 225 (1976) ("That life in one prison is much more disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to the institution with the more severe rules.")

2. Claim Two.

Plaintiff was indicted, tried, convicted and committed under the name of Debro Davis. While in prison, he has changed his name to Debro Siddiq Abdul-Akbar for religious purposes. He claims that prison officials' refusal to address him by his new name is a violation of his constitutional right to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                    Page 2
Not Reported in A.2d, 1995 WL 214348 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

freely practice the religion of his choice.

In *Matthews v. Morales,* 23 F.3d 118 (5th Cir.1994), an inmate brought an action against the Attorney General challenging a statute prohibiting an incarcerated person from legally changing his name. Plaintiff asserted that this statute violated his free exercise of Islam. Generally prison regulations implicating free exercise passes "constitutional muster only if they are no greater than is necessary to further important or substantial state interests." *Felix v. Rolan,* 833 F.2d 517 (5th Cir.1987). The Supreme Court of the United States has stated, however, that "prison regulations alleged to infringe constitutional rights are judged under a ' reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 349 (1987). The *Matthews* court noted that the statute barring name changes has a logical connection to a legitimate governmental interest, such as identifying persons sought on warrant and detainer, and preserving the criminal history of felons. As such the court held that the statute did not violate plaintiff's constitutional rights. *But see Barrett v. Virginia,* 689 F.2d 498 (4th Cir.1982) (a Virginia statute prohibiting incarcerated persons from legally changing names is overly broad and implicates an inmate's right to freedom of religion).

*2 Mr. Abdul-Akbar does not allege that a Delaware statute prevents him from legally changing his name. He only claims that the prison officials refuse to address him by his new name. In light of the holding of *Matthews,* this alleged failure to address Mr. Abdul-Akbar by his Islamic name cannot be said to have been a constitutional violation. Thus this allegation fails to state a claim.

### 3. Claim Three.

Mr. Abdul-Akbar alleges that prison guards pay other guards to work their shifts. In addition, he claims the guards pay certain prisoners to make items for them in the wood shop. This allegation also does not state a claim as plaintiff has no standing to litigate claims concerning illicit payments by guards. *Cf. Linda R.S. v. Richard D.,* 410 U.S. 614, 619 (1973); *Leeke v. Timmerman,* 454 U.S. 1165 (1981) (Inmates in institution at time of prison uprising lacked standing for the claim that officials conspired in bad faith to block issuance of arrest warrant for prosecution of prison guards who prisoners contend had unnecessarily beaten them.)

### 4. Claim Four.

Mr. Abdul-Akbar asserts that guards have stolen his kufi prayer cap and other items while he was in administrative segregation. Allegation of a single incident that "clothing and cosmetics belonging to plaintiff where [sic] missing ..." does not state a claim of constitutional violation.

In *Del Raine v. Williford,* 32 F.3d. 1024, 1042-47 (7th Cir.1994), the court held that insofar as a prisoner's constitutional right is not implicated, the plaintiff prisoner did not have a civil rights claim under 42 U.S.C. § 1983. The *Del Raine* court found that as prisoner's constitutional rights were not implicated by an alleged incident of a missing dictionary last seen in the prison post office, the prisoner plaintiff could not properly assert a section 1983 claim. Thus the court affirmed the district court's dismissal of this claim. *But see Kimbrough v. O'Neil,* 523 F.2d 1057 (7th Cir.1975) ( " Plaintiff's allegation that the ring which was taken from him by defendants [sheriff and his deputies] was not returned to him upon his release from their custody is sufficient to state a cause of action under 42 U.S.C. § 1983.")

As a single incident of alleged misplacement or theft of prisoner's belongings does not amount to a constitutional violation, Mr. Abdul-Akbar has failed to state a section 1983 claim.

### 5. Claim Five.

Next petitioner claims that he was dismissed from a prison job after a disciplinary "write-up" in retaliation for bringing suit against the prison officials. He contends that due process requires that he be given a hearing before dismissal from a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                              Page 3
Not Reported in A.2d, 1995 WL 214348 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

prison job.

Given the conditions of their confinement, ordinarily prisoners can claim no legitimate expectation of continued employment in their prison work assignments. One court has held that a prisoner's removal from his job assignment as an inmate nurse in a psychiatric ward is not cognizable under 42 U.S.C.A. § 1983. *Gardner v. Johnson,* 429 F.Supp. 432 (D.C.Mich.1977); *see also Rather v. Conte,* 849 P.2d 884 (Colo.App.1992) (Prisoners who were dismissed from their prison work assignments failed to state a claim under section 1983); *Jackson v. O'Leary,* 689 F.Supp. 846 (N.D.Ill.1988) (Illinois administrative regulation governing removal of prison inmates from work assignments did not vest inmate with protected liberty or property interest in his prison job so as to give rise to section 1983 action for reassignment of inmate to less desirable job, where regulation left decision to remove inmate from job assignment to unfettered discretion of prison officials.) Thus so long as the state statutes or regulations did not enlarge plaintiff's liberty or property interest, Mr. Abdul-Akbar does not state a 42 U.S.C.A. § 1983 claim for dismissal from a prison job assignment following a disciplinary "write-up."

### 6. Claim Six.

**\*3** Mr. Abdul-Akbar alleges that he was given a mattress unfit for human use because it was allegedly unclean and "urine stained". He alleges that sheets were not provided and the mattress was not otherwise cleaned. This, he says, violated his rights under the Eighth Amendment. Allegations of an unsanitary mattress, however, does not constitute cruel and unusual punishment.

In this context, the eighth amendment is violated only if a prisoner is deprived of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981). Conditions of confinement claims under the Eighth Amendment must meet both an objective and a subjective standard. *See Wilson v. Seiter,* 501 U.S. 294, 296-300 (1991). The objective prong analyzes the nature of the alleged condition and determines whether such conditions "would be deemed cruel and unusual if prescribed in a state or federal statute as the lawful punishment for a particular offense [.]" *Jackson v. Duckworth,* 955 F.2d 21, 22 (7th Cir.1992). Certainly not all unpleasant conditions of incarceration will violate the objective prong of the Eighth Amendment. "To the extent such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes,* 452 U.S. at 347.

The subjective prong examines the intent of the defendants in the commission of the acts or practices that constitute the alleged cruel and unusual punishment. *See Duckworth v. Franzen,* 780 F.2d 645 (7th Cir.1985), *cert. denied,* 479 U.S. 816 (1986). To satisfy the subjective prong, defendants actions must be wanton or with " deliberate indifference." *Wilson,* 501 U.S. at 302-3.

Accepting these allegations made as true for the moment, they constitute neither objectively nor subjectively measured infringement on the protection of basic human dignity that the eighth amendment protects. *See Wilson v. Schomig,* 863 F.Supp. 789, 795 (N.D.Ill.1994), (plaintiff's claim that his mattress has been stained with urine and feces did not allege sufficiently serious conditions to violate the objective standard of "cruel and unusual"); *Lunsford v. Bennett,* 17 F.3d 1574, 1580 (7th Cir.1994) (failure to provide personal hygiene items failed objective prong of "cruel and unusual" punishment).

### 7. Claim Seven.

Mr. Abdul-Akbar claims that he lives in fear because in the past a prisoner who filed a suit has suffered serious harm from a stabbing. This allegation fails to state a claim as it alleges no facts to constitute a violation of constitutional or federal statutory right and no violation of state law.

### 8. Claim Eight.

Mr. Abdul-Akbar asserts that white prisoners hold

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d    Page 4
Not Reported in A.2d, 1995 WL 214348 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

the highest paying jobs at his prison. He believes that this is due to racial discrimination which violates his constitutional right to equal protection under the laws.

Prison officials violate the equal protection clause of the Fourteenth Amendment with a policy of deliberate racial discrimination in the administration of the prison. *Wolff v. McDonnell,* 418 U.S. 539, 556 (1974). To establish an equal protection violation based on racial discrimination in the delegation of job assignments to inmates, a section 1983 plaintiff must satisfactorily demonstrate a discriminatory purpose as the motivating factor. It is insufficient to show that employments policies have a discriminatory impact on black inmates. *See Castaneda v. Partida,* 430 U.S. 482, 493 (1977) ; *Jones v. Sandahl,* 35 F.3d 568, 1994 WL 487277 (7th Cir.1994).

*4 Mr. Abdul-Akbar fails to state a claim for violation of his constitutional right since he does not allege any discriminatory intent by the prison officials in delegating prison jobs. Even if Mr. Abdul-Akbar's allegations were true, they would not constitute a violation of plaintiff's protected rights as he is not a candidate for any of the positions to which he claims rights.

### 9. Claim Nine.

Petitioner alleges that the classification system is flawed in that it places together prisoners who committed a wide ranging types of crimes without much commonality. Plainly this allegation fails to state a claim as this is merely a conclusion without any supporting facts. More importantly, neither statutes or constitutions require the administration of the prison to take into account Mr. Abdul-Akbar's theories on sound penology.

### 10. Claim Ten.

Lastly, plaintiff claims that he has been given a urine test based on an informer's false information. Moreover, he asserts that "[g]uards even forge snitch notes to harass." This allegation also fails to state a cause of action. The claim is directed against the "so-called informers." As these informers are not alleged to be state actors, plaintiff fails to state a claim that his constitutional rights have been violated. Allegations against guards that "[they] forge snitch notes to harass" is general, conclusory and fails to state a violation of constitutional or statutory rights.

Therefore I will direct the Register in Chancery to docket the complaint, which is hereby dismissed on the merits, and to send to petitioner a copy of this memorandum opinion and order. So Ordered.

FN1. The others named as defendants are the Department of Corrections personnel, Robert J. Watson, Stan Taylor, Rick Kearney, George Turitt, Howard Fisher, Michael Deloy, Rudy Druming, Lieutenant Tyndall, and any and all other persons who may have acted in concert with them unknown at this time.

Del.Ch.,1995.
Abdul-Akbar v. Department of Corrections
Not Reported in A.2d, 1995 WL 214348 (Del.Ch.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.