# EXHIBIT Q
# (con't 4)

Slip Copy                                                                                                          Page 8
Slip Copy, 2007 WL 88084 (M.D.Pa.)
**(Cite as: Slip Copy)**

give rise to a [constitutional] claim.") (citations omitted). Thus, even if the prison official allegedly failed to process the prisoner's grievances, no constitutional claim is stated. *Burnside, supra.*

As the Court stated in *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985) (per curiam) a mere " linkage in the prison chain of command" is not sufficient to demonstrate personal involvement for purposes of section 1983. Permitting supervisory liability where a defendant, after being informed of the violation through the filing of grievances, reports or appeals, failed to take action to remedy the alleged wrong is not enough to show that the defendant has the necessary personal involvement. *Rizzo, supra.* Allowing only a letter sent to an official to be sufficient to impose supervisory liability would permit an inmate to subject defendants to potential liability in any case in which the prisoner merely transmitted correspondence to the official. *Id.* Thus, several courts have held that " it is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations." *Greenwaldt v. Coughlin,* 1995 WL 232736, at *4 (S.D.N.Y.Apr.19, 1995) (citations omitted); *accord Rivera v. Goord,* 119 F.Supp.2d 327, 344 (S.D.N.Y.2000) (allegations that inmate wrote to prison officials and was ignored insufficient to hold those officials liable under section 1983); *Woods v. Goord,* 1998 WL 740782, at *6 (S.D.N.Y. Oct. 23, 1998) (" Receiving letters or complaints ... does not render [prison officials] personally liable under § 1983."); *Watson v. McGinnis,* 964 F.Supp. 127, 130 (S.D.N.Y.1997) ("The law is clear that allegations that an official ignored a prisoner's letter are insufficient to establish liability.") (citations omitted). The Second Circuit Court has stated that " if mere receipt of a letter or similar complaint were enough, without more, to constitute personal involvement, it would result in liability merely for being a supervisor, which is contrary to the black-letter law that § 1983 does not impose respondeat superior liability." *Walker v. Pataro,* 2002 WL 664040, at *12 (S.D.N.Y. Apr. 23, 2002).

*8 Nor has Plaintiff stated a First Amendment retaliation claim against Defendants Beard, Kelchner and Law. Plaintiff only alleges that Defendant Dr. Newton retaliated against him by taking him off of his medication due to his grievance about being placed in the SMU which is not suitable for a mentally disabled person. In *Rauser v.. Horn,* 241 F.3d 330, 333 (3d Cir.2001), the Court stated that "a prisoner litigating a retaliation claim must show that he suffered some ' adverse action' at the hands of the prison officials." To establish a retaliation claim, the Plaintiff must also show that there exists a causal nexus between the Plaintiff's constitutionally protected conduct and the adverse action. *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996). We find that this nexus does not exist with respect to our two supervisory Defendants and with respect to Defendant Law.

Plaintiff alleges that Defendant Law somehow conspired with the prison mental health department to deny him mental health treatment. (*Id.,* p. 4, ¶ 18.). [FN9] Plaintiff fails to state a conspiracy claim against Defendant Law.

> FN9. Since we again recommend that Plaintiff's Eighth Amendment improper medical care claim against Defendants Newton, Kahn and Kalsky proceed, we shall not detail Plaintiff's allegations in his Amended Complaint against them.

The Third Circuit in *Jones v. Maher,* Appeal No. 04-3993 (3d Cir.2005), slip op. p. 5, stated that broad and conclusory allegations in a conspiracy claim are insufficient to state a viable claim. (Citation omitted). Also, the United States District Court for the Middle District of Pennsylvania, in *Flanagan v. Shively,* 783 F.Supp. 922, 928-29 (M.D.Pa.1992), aff'd. 980 F.2d 722 (3d Cir.1992), *cert. denied* 510 U.S. 829 (1993), stated as follows:
Bare conclusory allegations of "conspiracy" or " concerted action" will not suffice to allege a conspiracy. The plaintiff must expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred. In *Waller v. Butkovich,* 584 F.Supp. 909, 931 (D.C.N.C.1984), the district court outlined the pleading requirements

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                      Page 9
Slip Copy, 2007 WL 88084 (M.D.Pa.)
**(Cite as: Slip Copy)**

in a conspiracy action.
In most cases, a bare conclusory allegation of 'conspiracy' or 'concerted action' will not suffice. The plaintiffs must expressly allege an agreement or make averments of 'communication, consultation, cooperation, or command' from which such an agreement can be inferred ...
(Citation omitted.) ... Allegations that the defendants' actions combined to injure the plaintiffs are not a sufficient basis from which to imply a conspiracy ... (Citation omitted.)
Additionally, the plaintiffs must make 'specific factual allegations connecting the defendant to the injury' ... (Citations omitted.) ...

The Plaintiff fails to state a conspiracy claim against Defendant Law, in that he does not allege an agreement between her and the remaining psychiatrist and psychologist Defendants to deliberately treat his mental health ailments improperly. There is no allegation that Defendant Law played any role in the decision to remove Plaintiff from his medication or to treat his mental health problems improperly. We find that Plaintiff's bare conclusory allegations of conspiracy against Defendant Law are inadequate to allege a conspiracy claim. *See Flanagan, supra.*

*9 Further, since the Plaintiff was being treated by the prison medical staff, Dr. Newton, Dr. Kahn and Psychologist Kalsky, Defendants Beard, Kelchner and Law, non-physicians, cannot be held liable under *Durmer v. O'Carroll,* 991 F.2d. 64, 69 (3d Cir.1993).

Specifically, Plaintiff alleges that Defendants psychiatrist and psychologist violated his Eighth Amendment rights by not properly treating his mental health problems and by taking him off of his medication. Plaintiff indicates that he disputes the Defendant doctors' finding that he did not have a mental health problem requiring medication. The Plaintiff has failed to state a viable claim against Defendants Beard, Kelchner and Law, since they were not physicians, and he was receiving his medical treatment from the prison psychiatrists and psychologist, even though he disagreed with the treatment rendered and felt that his mental health problems were not being adequately treated.

Any claim that Defendants Beard, Kelchner and Law were deliberately indifferent to the Plaintiff's serious medical needs must fail. The stated Defendants, non-physicians, cannot be found deliberately indifferent to the Plaintiff's serious medical needs, as the Plaintiff acknowledges that he was under the care of the mental health doctors. *Durmer,* 991 F.2d. at 69 (3d. Cir.1993). The decisions how to treat Plaintiff and with what medication were made by the treating Defendant doctors. We recognize that in the case of *Devern v. SCI-Graterford,* 2004 WL 1552000 * 1 (E.D.Pa.), the Court limited *Durmer* and held that a "non-physician supervisor may be liable under § 1983 if he had knowledge or reason to know of medical mistreatment." In our case, the Plaintiff does not assert that Defendants Beard, Kelchner and Law were involved with the decisions how to treat Plaintiff and with what medication. Nor is it alleged that these Defendants knew that Plaintiff's treatment by the medical staff was improper or inadequate. Further, it is not alleged that these Defendants knew that the finding of the medical staff that Plaintiff did not have a mental health problem was improper or rendered to deny him medication.

Plaintiff attempts to make the stated Defendant responsible for the conduct of the treating doctors whom he admits was providing him with care. Liability in a § 1983 case may only be based on the Defendant's personal involvement in conduct amounting to a constitutional violation. *Hampton v. Holmesburg Prison Officials,* 546 F.2d 1077 (3d Cir.1976); *Rizzo v. Goode,* 423 U.S. 362 (1976). There is no claim that Defendants Beard, Kelchner and Law had any direct involvement in Plaintiff's denial of medical treatment claim or that they had knowledge of any medical mistreatment. As stated, all of the actions taken with respect to Plaintiff's mental health care were performed by the Defendant doctors. Beard, Kelchner and Law are not alleged to have been involved in prescribing Plaintiff any medication or in taking him off of it. Nor are they alleged to have played any role in diagnosing Plaintiff with a mental disorder and later finding that he did not have one. Plaintiff cannot hold the non-physician Defendants liable on the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Page 10

Slip Copy, 2007 WL 88084 (M.D.Pa.)
(Cite as: Slip Copy)

basis of *respondeat superior,* as he tries to do in this case. *Id.*

*10 Our conclusion is supported by this very Court's decision in *Chimenti v. Kimber,* Civil No. 01-0273 (M.D.Pa.2002), aff'd. in part Third Circuit Appeal No. 03-2056 (6-8-05). In *Chimenti,* as in this case, the Plaintiff was under the care of the prison's medical staff and the Commonwealth Defendants were not physicians, nor were they involved in his care. The Court held that under *Durmer,* there was no basis for an Eighth Amendment claim against any of the Commonwealth Defendants. *Id.* at pp. 17-18.

### B. Defendants Southers and Whaling

Plaintiff alleges that Defendant Southers, as unit manager of the SMU, was responsible for the welfare of inmates in the SMU, and that Defendant Whaling, as the SMU counselor, was to make sure the inmates in the SMU received proper counseling. (Doc. 18, p. 3, ¶ 's 7.-8.). Plaintiff vaguely alleges that these Defendants mistreated him by not making sure he received the proper treatment and counseling in the SMU. Based on the above discussion, insofar as Plaintiff was being treated by the prison medical staff for his mental health problems, we find that there is no Eighth Amendment claim stated as against Defendants Southers and Whaling under *Durmer.*FN10

> FN10. Indeed, Plaintiff's claim against Defendants Southers and Whaling is contingent on his claim that the Defendant doctors misdiagnosed him as not having a mental health problem and as not requiring medication.

### C. Due Process Claim

Further, to the extent that Plaintiff claims that Defendants Beard, Kelchner, Southers and Whaling violated his due process rights by not giving him a hearing prior to placing him in the SMU upon his transfer to SCI-Camp Hill, we find that this Court has repeatedly found no liberty interest with respect to such claims. (Doc. 18, p. 5, ¶ 28.).

We conclude that, based on this Court's recent cases, including *Francis v. Dodrill,* 2005 WL 2216582 (M.D.Pa.) and *Stotts v. Dodrill,* Civil No. 04-0043 (M.D.Pa.), Petitioner's placement in the SMU does not implicate his due process rights. Therefore, we shall recommend that this claim be dismissed as against Defendants Beard, Kelchner, Southers and Whaling.

Plaintiff states that he is challenging his placement in the Special Management Unit at SCI-Camp Hill. Plaintiff claims that the SMU is not suitable for an inmate such as he, i.e., "a mentally disabled person." (Doc. 18, p. 3, ¶ 13.). Plaintiff states that on January 13, 2006, he was supposed to go to the SNU and not the SMU due to his mental health issues. However, Plaintiff states that he was placed in the SMU, which is a control unit and not suitable for him. Plaintiff alleges that the stated Defendants violated his due process rights by placing him in the SMU without first being given a hearing. (Doc. 18, pp. 5-6, ¶ 28.). This Court has consistently held that placement in the Special Management Unit does not give rise to atypical and significant hardships and does not implicate due process of law.

Thus, Plaintiff claims that he has been made to suffer atypical hardship without due process due to his immediate placement in the SMU upon his transfer to SCI-Camp Hill in January 2006, since he was deprived of his liberty in the SMU without a hearing. (*Id.*). Plaintiff seems to claim that the procedural safeguards of *Wolff v. McDonnell,* 418 U.S. 539 (1974), were not followed in his case. (*Id.* ). Plaintiff seems to claim that his placement in the SMU constitutes an atypical and significant hardship and implicates his due process rights. (*Id.*).

*11 We find that this Court, in the stated cases, has considered similar claims and has found that an inmate's placement in the SMU does not implicate his due process rights. *See Franics, supra* at * 3.

Based on this Court's decisions in *Francis v. Dodrill,* 2005 WL 2216582 (M.D.Pa.), and *Stotts v. Dodrill,* Civ. No. 04-0043, M .D. Pa.,FN11 we find that our Plaintiff's placement in the SMU does not

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Page 11

Slip Copy, 2007 WL 88084 (M.D.Pa.)
**(Cite as: Slip Copy)**

implicate his due process rights. As this Court in *Francis* stated:

> FN11. In *Stotts,* this Court found that federal inmates' placement in the SMU following a riot incident did not violate their due process rights, that inmates' placement in the SMU was not punitive in nature, and that inmates were not entitled to the procedural safeguards.

The defendants also argue that Francis' placement in the SMU does not implicate his due process rights. We agree. A due process liberty interest "in avoiding particular conditions of confinement may arise from state policies or regulations." *Wilkinson v. Austin,* 545 U.S. 209, ----, 125 S.Ct. 2384, 2393, 162 L.Ed.2d 174 (2005). The Due Process Clause protects a prisoner's right to "freedom from restraint, which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship in relation to the ordinary incidents of prison life." *Id.* at 2394 (quoting *Sandin v. Connor,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)).

The proper focus for determining whether prison conditions give rise to a due process liberty interest is the nature of the conditions, not mandatory language in prison regulations. *Sandin,* 515 U.S. at 484. In *Sandin,* an inmate was charged with violating prison regulations. *Id.* at 475. At a hearing, the hearing committee refused the inmate's request to present witnesses. *Id.* The committee found the inmate guilty and sentenced him to disciplinary segregation. *Id.* The inmate sought review, and a deputy administrator found some of the charges unfounded and expunged his disciplinary record. *Id.* at 476. Thereafter, the inmate filed suit pursuant to 42 U.S.C. § 1983 for a deprivation of procedural due process during the disciplinary hearing. *Id.* The Tenth Circuit found that he had a protected liberty interest because it interpreted the prison regulations to require that the committee find substantial evidence of misconduct before imposing segregation. *Id.* at 477. The Supreme Court reversed, finding no liberty interest.

*Id.* at 484. In doing so, it rejected an approach that focused on whether the prison regulations "went beyond issuing mere procedural guidelines and has used 'language of an unmistakably mandatory character' such that the incursion on liberty would not occur 'absent specified substantive predicates." ' *Id.* at 480 (quoting *Hewitt v. Helms,* 459 U.S. 460, 471-72, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983)). The Court found this approach undesirable because it created a disincentive for prison administrators to codify prison management procedures and because it "led to the involvement of federal courts in the day-to-day management of prisons, often squandering judicial resources with little offsetting benefit to anyone." *Id.* at 482. Thus, the Court held liberty interests "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force ... nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. In applying this test, the Court observed, "[discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Id.* at 485. The Court then found that the inmate's disciplinary segregation "did not present a dramatic departure from the basic conditions of Conner's indeterminate sentence" because the conditions of disciplinary segregation were similar to those faced in administrative and protective custody. *Id.* at 486.

*12 In *Wilkinson v. Austin,* 545 U.S. 209, ----, 125 S.Ct. 2384, 2393,
162 L.Ed.2d 174 (2005), the Court applied the *Sandin* test and found that the plaintiff's due process rights were implicated when he was placed in a program where:
almost all human contact is prohibited, even to the point that conversation is not permitted from cell to cell; the light, though it may be dimmed, is on for 24 hours; exercise is for 1 hour per day, but only in a small indoor room ... [P]lacement ... is indefinite and, after an initial 30 day review, is reviewed just annually.... [P]lacement disqualifies an otherwise eligible inmate for parole consideration.
*Id.* at 2394-95.
The court found that these harsh conditions "give rise to a liberty interest in their avoidance."

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Id.* at 2395.

*Fraise v. Terhune,* 283 F.2d 506 (3d Cir.2002) applied the Sandin test and found that avoiding placement in the Security Threat Group Management Unit (STGMU) in the New Jersey prison system is not a protected liberty interest. Inmates who the prison deemed members of groups that posed a security threat were placed in the STGMU. *Id.* at 509. "An inmate assigned to the STGMU remains in maximum custody until the inmate successfully completes a three-phase behavior modification program." *Id.* at 511. The Court found that despite the additional restrictions, prisoners have no liberty interest in avoiding placement in the STGMU. *Id.; see also Griffin v. Vaughn,* 112 F.3d 703, 706 (3d Cir.1997) (finding that additional restrictions in administrative custody for a period of fifteen months does not deprive prisoners of protected liberty interests).
We find that the conditions in the [USP-Lewisburg] SMU do not remotely approach the severity of the conditions *Wilkinson* found to give rise to a protected liberty interest, and are comparable to the conditions in cases such as *Sandin, Fraise,* and *Griffin,* which found no protected liberty interest.

*Id.,* pp. *3-*4.

The *Francis* Court concluded that the restrictions in the SMU in federal prison were no greater than the restrictions placed on the inmate in *Griffin. Id.* * 5. In our case, Plaintiff does not allege any greater restrictions in the SMU at SCI-Camp Hill than were placed on the inmates in *Francis.*

The *Francis* Court then stated:
Inmates have no due process right to a facility of their choosing. *Young v. Quinlan,* 960 F.2d 351, 358 n. 16 (3d Cir.1992). The Bureau of Prisons retains sole discretion over where to place an inmate. 18 U.S.C. § 3621. Inmates do, however, have a liberty interest in avoiding transfer to facilities where the conditions impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 484. This is not such a transfer. We find that these conditions and the conditions overall in the SMU are reasonable and proportionate to those in other prisons in the federal system and across the country and do not impose an atypical and significant hardship in relation to the ordinary incidents of prison life. Using restrictions to promote prosocial behavior falls within the parameters of a sentence imposed by a court of law. While Francis clearly would prefer not to be housed in the SMU, his preference is not a liberty interest protected by the Due Process Clause.

*13 *Id.*

Further, the Court in *Griffin v. Vaughn,* 112 F.3d 703, 706 (3d Cir.1997), stated:
Applying the precepts of *Sandin* to the circumstances before us, we conclude that the conditions experienced by Griffin in administrative custody did not impose on him "atypical and significant hardship," that he was thus deprived of no state created liberty interest, and that he failure to give him a hearing prior to his transfer to administrative custody was not a violation of the procedural due process guaranteed by the United States Constitution.

The *Griffin* Court concluded that, considering the reasons to transfer inmates from general population to administrative custody, such as inmates deemed to be security risks, stays in administrative custody for many months (*i.e.* as long as 15 months) are not uncommon. *Id.* at p. 708. Thus, the *Griffin* Court held that the inmate Griffin's transfer to and confinement in administrative custody "did not deprive him of a liberty interest, and that he was not entitled to procedural due process protection." *Id.*

Moreover, this Court in *Francis, supra at* * 2, stated that "A violation of the Due Process Clause involves the following three elements: 1) the claimant must be 'deprived of a protectable interest; 2) that deprivation must be due to some governmental action; and 3) the deprivation must be without due process.' " (citation omitted). The *Francis* Court, as stated, found that placement of its Plaintiff, a federal inmate at USP-Lewisburg, in the SMU did not implicate his due process rights. *Id.* * 3. Based on *Griffin* and *Francis,* our Plaintiff's placement in the SMU for eight (8) months does not give rise to a protected liberty interest.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                           Page 13
Slip Copy, 2007 WL 88084 (M.D.Pa.)
**(Cite as: Slip Copy)**

### *D. Fourteenth Amendment Equal Protection Claim*

Plaintiff asserts that his Fourteenth Amendment right to equal protection was violated by Defendants since he was not being given the proper treatment due to his mental disability. (Doc. 18, pp. 5-6). Plaintiff avers that Defendants treated him differently than similarly situated inmates who did not have mental health problems. We find that the § 1983 Equal Protection claims should be dismissed because the Plaintiff has failed to allege that Defendants purposely discriminated against him on the basis of his race, gender, or nationality. There is no claim that Defendants were motivated by a discriminatory intent with respect to Plaintiff's allegations. In fact, Plaintiff alleges that he was taken off of his medication at the outset by Defendant Dr. Newton because this Defendant was retaliating against Plaintiff for his complaint that the prison staff should not have placed him the SMU since it was not suitable for him. (Doc. 18, ¶'s 13.-14). Plaintiff clearly did not claim a discriminatory motive for Dr. Newton's alleged conduct. Additionally, we do not find that Plaintiff has properly stated that he and any other inmates were similarly situated for purposes of an equal protection claim.

*14 The elements of a § 1983 Equal Protection claim require Plaintiff to state Defendants intended to discriminate against him, and later to prove this by either direct or circumstantial evidence. *See Pa. v. Flaherty,* 983 F.2d 1267 (3d Cir.1993) (Intent is a *prima facie* element of a § 1983 equal protection claim of discrimination) (citing *Washington v. Davis,* 426 U.S. 229 (1976). *See also Williams v. Pa. State Police,* 108 F.Supp.2d 460, 471 (E.D.Pa.2000) ("to prevail on a § 1983 claim, a plaintiff must prove that the Defendant intended to discriminate") (citation omitted).

The Equal Protection Clause does not require that all persons be treated alike, but instead, a plaintiff must show that the differential treatment to those similarly situated was unreasonable, or involved a fundamental interest or individual discrimination. *Tigner v. Texas,* 310 U.S. 141, 147 (1940); *Price v. Cohen,* 715 F.2d 87, 91 (3d Cir.1983), *cert. denied,* 465 U.S. 1032 (1984). It is well-settled that a litigant, in order to establish a viable equal protection claim, must show an intentional or purposeful discrimination. *Snowden v. Hughes,* 321 U.S. 1, 8 (1944); *Wilson v. Schillinger,* 761 F.2d 921, 929 (3d Cir.1985), *cert. denied,* 475 U.S. 1096 (1986); *E & T Realty v. Strickland,* 830 F.2d 1107, 1113-14 (11th Cir.1987), *cert. denied* 485 U.S. 961 (1988). This "state of mind" requirement applies equally to claims involving (1) discrimination on the basis of race, religion, gender, alienage or national origin, (2) the violation of fundamental rights, and (3) classifications based on social or economic factors. *See, e.g., Britton v. City of Erie,* 933 F.Supp. 1261, 1266 (W.D.Pa.1995), *aff'd,* 100 F.3d 946 (3d Cir.1996); *Adams v. McAllister,* 798 F.Supp. 242, 245 (M.D.Pa.), *aff'd.* 972 F.2d 1330 (3d Cir.1992).

As the Court in *Barnes Foundation v. Township of Lower Merion,* 942 F.Supp. 970, 983 (E.D.Pa.1997), stated:
The Equal Protection Clause of the Fourteenth Amendment of the United States Constitution provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. The Equal Protection Clause announces the "fundamental principle" that "the State must govern impartially," *New York City Transit Auth. v. Beazer,* 440 U.S. 568, 587, 99 S.Ct. 1355, 1367, 59 L.Ed.2d 587 (1979), and "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985).

Plaintiff has failed to allege any facts from which it can be concluded that our Defendants engaged in intentional or purposeful discrimination or that he was treated differently by Defendants than similarly situated persons on the basis of his race, nationality or gender. In short, Plaintiff does not allege any discrimination with respect to his placement in the SMU or with respect to his treatment he received there. There is no cognizable equal protection claim stated. Plaintiff has failed to allege any facts from which it can be concluded that Defendants engaged

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Page 14

Slip Copy, 2007 WL 88084 (M.D.Pa.)
**(Cite as: Slip Copy)**

in intentional or purposeful discrimination or that he was treated differently than similarly situated individuals on the basis of his race, religion, gender, alienage, or national origin.

*15 Additionally, the Plaintiff has not stated any specific acts taken by Defendants to show any discriminatory animus attributable to the stated Defendants. Thus, we shall recommend that Plaintiff's Fourteenth Amendment claims as against all Defendants be dismissed.

### F. Defendants Newton, Khan and Kalsky

We find that Plaintiff has stated a First Amendment retaliation claim against Defendant Dr. Newton, and that he has stated Eighth Amendment claims against Defendants Newton, Khan and Kalsky.

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan,* 511 U.S. 825 (1994) *citing Helling v. McKinney,* 509 U.S. 25 (1993); *Wilson v. Seiter,* 501 U.S. 294 (1991); *Estelle v. Gamble,* 429 U.S. 97 (1976). An inadequate medical care claim, as we have here, requires allegations that the prison official acted with "deliberate indifference to serious medical needs" of the plaintiff, while a prisoner. *Estelle,* 429 U.S. at 104 (1976); *Unterberg v. Correctional Medical Systems, Inc.,* 799 F.Supp. 490, 494-95 (E.D.Pa.1992). The official must know of and disregard an excessive risk to inmate health or safety. *Farmer,* 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* "The question ... is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health.' " *Farmer,* 511 U.S. at 843.

In order to state a viable Eighth Amendment claim, a prisoner must demonstrate that the Defendant was deliberately indifferent to his medical needs and that those needs were serious. *Estelle,* 429 U.S. at 106.

Mere disagreement as to the proper medical treatment does not support a claim of an Eighth Amendment violation. *Monmouth County Correctional Institution Inmates v. Lensaro,* 834 F.2d 326 (3d Cir.1987), *cert. denied,* 486 U.S. 1006 (1988); *see also Durmer v. O'Carroll,* 991 F.2d 64, 67 (3d Cir.1993) ("[T]he law is clear that simple medical malpractice is insufficient to present a constitutional violation."). As such, "[a] distinction must be made between a case in which the prisoner claims a complete denial of medical treatment and one where the prisoner has received some medical attention and the dispute is over the adequacy of the treatment." *Nottingham v. Peoria,* 709 F.Supp. 542, 547 (M.D.Pa.1988) *citing United States ex. rel. Walker v. Fayette County,* 549 F.2d 573, 575 n. 2 (3d Cir.1979).[FN12]

> FN12. We note that, to an extent, our Plaintiff disputes the Defendant doctors' finding that he did not have a mental health issue despite being diagnosed at his previous prison before his transfer to SCI-Camp Hill that he had a mental health diagnosis, *i.e.* anti-social personality disorder, and required medication. (Doc. 18, p. 4). Insofar as Plaintiff disputes the doctors' diagnosis of his mental condition and the doctors' medical decision that he did not require medication, this is not an actionable Eighth Amendment claim.

In the case of *Monmouth County Correctional Institutional Inmates v. Lanzaro,* 834 F.2d 326, 347 (3d Cir.1987), the court addressed whether the Plaintiff's alleged injuries rose to the level of being sufficiently serious for the purpose of establishing an Eighth Amendment violation. The *Monmouth County* case stated that:

*16 "A medical need is 'serious,' in satisfaction of the second prong of the *Estelle* test, if it is 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Pace v. Fauver,* 479 F.Supp. 456, 458 (D.N.J.1979), *aff'd,* 649 F.2d 860 (3d Cir.1981); *accord Laaman v. Helgemoe,* 437 F.Supp. 269, 311 (D.N.H.1977). The seriousness of an inmate's

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                           Page 15
Slip Copy, 2007 WL 88084 (M.D.Pa.)
(Cite as: Slip Copy)

medical need may also be determined by reference to the effect of denying the particular treatment. For instance, *Estelle* makes clear that if 'unnecessary and wanton infliction of pain,' 429 U.S. at 103, 97 S.Ct. at 290, results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment. *See Id,* at 105, 97 S.Ct. at 291. In addition, where denial or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious. ( *Citations omitted* )."

*Monmouth County,* 834 F.2d at 347(3d Cir.1987).

We find that Plaintiff has met the first hurdle of *Estelle, i.e .,* Defendants were deliberately indifferent to his medical needs, as he alleges that Defendants Newton, Kahn and Kalsky denied him required medical care and that they placed him in jeopardy amongst his fellow inmates by disclosing his mental health condition to them.

In *Monmouth, supra,* 834, F.2d at 347, the Court said that a medical need is serious if the delay or denial of health care results in "wanton infliction of pain, lifelong handicap or permanent loss." Here Plaintiff alleges sufficient physical and emotional suffering, and he claims that it was as a result of any of our Defendants' non-treatment. Taking all of the allegations of Plaintiff as true, as we must at this juncture, he states legally sufficient Eighth Amendment claims against Defendants Newton, Kahn and Kalsky in this case. Thus, we shall recommend that this case proceed with respect to these three Defendants since the Plaintiff has alleged deliberate indifference to his serious medical condition under the Eighth Amendment as against them. Therefore, we shall recommend that Plaintiff's Eighth Amendment claims against Defendants Newton, Kahn and Kalsky proceed.

### V. Recommendation.

Based on the foregoing, it is respectfully recommended that Plaintiff's action as against Defendants Kelchner, Beard and Law be dismissed. Specifically, we find that Defendants Kelchner and Beard lack sufficient personal involvement in this case. We find that Defendant Law, by denying Plaintiff's grievance, is not sufficiently involved in this case. We also find no conspiracy claim is stated as to Defendant Law. We find that Plaintiff's Fifth Amendment Due Process claim with respect to his placement in the SMU should be dismissed, and that his Fourteenth Amendment Equal Protection claim as against all Defendants should be dismissed. Further, we find that Plaintiff's claims as against the Defendants in their official capacities should be dismissed to the extent that he seeks money damages. We find that Defendants Southers and Whaling should be dismissed. We find that Plaintiff has stated a First Amendment retaliation claim against Defendant Newton, and that he has stated Eighth Amendment claims against Defendants Newton, Kalsky and Kahn. Finally, it is recommended that this case be remanded to the undersigned for further proceedings.

### *NOTICE*

\*17 **NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **September 7, 2006.**

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within ten (10) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy  
Slip Copy, 2007 WL 88084 (M.D.Pa.)  
**(Cite as: Slip Copy)**

Page 16

modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

M.D.Pa.,2007.  
Spencer v. Kelchner  
Slip Copy, 2007 WL 88084 (M.D.Pa.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.